**UNITED STATES of America,**

v.

**Gul Khan KHATTAK, Appellant.**

No. 00–4169.

United States Court of Appeals,
Third Circuit.

Argued July 20, 2001.

Filed Dec. 6, 2001.

558

Lori M. Koch (Argued), Office of Federal Public Defender, Camden, NJ, Attorney for Appellant.

George S. Leone (Argued), Office of United States Attorney, Newark, NJ, Attorney for Appellee.

Before: SCIRICA, RENDELL and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case addresses the validity of a "waiver of appeal" provision in a guilty-plea agreement, an issue of first impression in our court. Ten other Courts of Appeals have held that such waivers are generally valid. We hold that waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice.

## I.

On September 13, 1994, defendant Gul Khan Khattak, a resident of Pakistan, was charged with conspiring to possess with intent to distribute and to import eight kilograms of heroin from Pakistan into the United States. On April 30, 1999, Khattak was arrested and extradited to the United States.[1] In a proposed plea agreement, the government agreed: 1) to accept Khattak's guilty plea to the conspiracy to import heroin charge; 2) to dismiss the conspiracy with intent to distribute charge; 3) to bring no further charges against Khattak related to past heroin or hashish transactions; 4) to aid Khattak's efforts to be exempted from the ten-year mandatory minimum for conspiracy to import heroin by stipulating to four of the five elements needed to qualify for the "safety valve" under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2; 5) to stipulate to Khattak's eligibility for a two-level reduction for acceptance of personal responsibility under U.S.S.G. § 3E1.1(a); and 6) to agree that Khattak had "timely notified authorities" of his intention to plead guilty, qualifying for an additional one-level reduction under U.S.S.G. § 3E1.1(b)(2).

The government also stipulated that the applicable sentencing guideline for violating 21 U.S.C. § 963 was U.S.S.G. § 2D1.1 and that the amount of heroin was "less than ten kilograms," resulting in a base offense level of 34. With three levels of reduction, the government agreed the total offense level was 31. The government also waived its right to appeal the judicial determination of the offense level if it exceeded level 31.[2]

In exchange, Khattak agreed: 1) to plead guilty to conspiracy to import heroin; 2) to stipulate he intended to import eight kilograms of heroin, rendering appropriate a base level of 34 (the weight was at least three kilograms, but less than ten); 3) to stipulate the total offense level should be no greater than 31; and 4) to waive his right to appeal the determination of the offense level. Significantly for our purposes, the plea agreement also provided:

> Gul Khan Khattak knows that he has, and voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing—including, but not limited to, an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255—that challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or less than the stipulated offense level. . . .

(Supplemental Appendix at 8.) Both the government and Khattak retained the right to seek additional adjustments or departures. The plea agreement provided that "[t]o the extent that the parties do not

---

**1.** Khattak and co-defendant Amir Hanza Khan attempted to convince a Customs Officer of the Pakistani Government to help smuggle heroin into the United States. At the request of the United States Drug Enforcement Agency, the Customs Officer agreed to act in an undercover capacity. He met with Khattak and Khan on several occasions, capturing some of the meetings on videotape. The Customs Officer eventually agreed to assist in shipping eight kilograms of heroin to the United States. Although Khattak was not present for all the meetings, Khan was clearly negotiating and making arrangements on be-

half of himself and Khattak, often using words like "we" or "our" in reference to himself and Khattak.

**2.** The plea agreement stated, "The government will not file any appeal, motion, or writ that challenges the sentencing court's determination or imposition of the offense level, if the total offense level determined by the court is equal to or greater than the stipulated offense level. . . ." (Supplemental Appendix at 8.)

stipulate, each reserves the right to argue the effect of any fact upon sentencing." (*Id.* at 3–4.) In this regard, Khattak clarified his desire to pursue a minor-role adjustment, to which the government would not agree.

Khattak signed the plea agreement in the presence of the District Court.[3] Acknowledging the agreement had been translated, Khattak testified, "I offer my plea of guilty freely and voluntarily of my own accord with full understanding of all matters set forth in the ... Indictment[and] in this application." (*Id.* at 3–4.) The District Court then conducted an extensive Rule 11 colloquy, with the help of a translator.

The District Court specifically questioned Khattak's understanding of his waiver of appeal and its effect on his desire for a minor-role adjustment. The Court asked, "Do you understand that so long as I sentence you based on an Offense [Level] of 31 or less, you will not be able to appeal my sentence, and will not be able to challenge the sentence in later proceedings that might otherwise be permitted under law?" Khattak replied, "Yes, I understand." The Court then explained, "The result of that, I want to also make clear that even if I deny your minor role adjustment, you will not be able to appeal that decision because it's still a 31, if everything else is followed, you will not be able to appeal my decision on this point?" Again, Khattak replied, "Yes, I understand." (Appendix at 47.)

The District Court denied the minor-role adjustment sought by Khattak, but fixed the offense level at 29, which carried a range of 87 to 107 months' imprisonment.[4] The District Court then departed downward to 84 months, based on the harsh conditions in the Pakistani jail where Khattak had been detained prior to extradition. Despite his waiver, Khattak filed a notice of appeal.

## II.

■ Khattak does not claim he misunderstood his waiver. Nor does he challenge the language of his plea agreement, plainly waiving his ability to appeal. But Khattak contends that waiver-of-appeals provisions are void as contrary to public policy, because defendants cannot ever knowingly and voluntarily waive their rights to appeal future errors. Khattak asks us to void the waiver-of-appeals provision of his plea agreement and reach the merits of his appeal (the denial of a minor-role adjustment), or in the alternative, vacate his guilty plea. We examine the legality of waiver-of-appeals provisions de novo, as it is a question of law. *United States v. Anglin,* 215 F.3d 1064, 1066 (9th Cir.2000). We do not address the merits of Khattak's appeal.

## III.

■ As noted, ten other Courts of Appeals have found waivers of appeals generally permissible and enforceable. *United States v. Teeter,* 257 F.3d 14, 21 (1st Cir. 2001); *United States v. Fisher,* 232 F.3d 301, 303 (2d Cir.2000); *United States v. Brown,* 232 F.3d 399, 403 (4th Cir.2000); *United States v. Branam,* 231 F.3d 931, 932 (5th Cir.2000); *United States v. Fleming,* 239 F.3d 761, 763–64 (6th Cir.2001); *United States v. Jemison,* 237 F.3d 911, 916–18 (7th Cir.2000); *United States v.*

---

3. Because of a typographical error, Khattak read and twice initialed corrections in the waiver paragraph.

4. The Court found Khattak eligible for the safety valve under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 and reduced his offense level from 31 to 29.

*Estrada–Bahena*, 201 F.3d 1070, 1071 (8th Cir.2000); *United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir.2000); *United States v. Rubio*, 231 F.3d 709, 711 (10th Cir.2000); *United States v. Howle*, 166 F.3d 1166, 1168–69 (11th Cir.1999). Each case follows a similar line of reasoning.

■■■ As the Supreme Court has stated, "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); *see also Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ("The most basic rights of criminal defendants are ... subject to waiver."). In every plea agreement, the defendant waives the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In addition, a defendant can waive his rights against double jeopardy and his Sixth Amendment right to counsel. *Ricketts v. Adamson*, 483 U.S. 1, 10, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (double jeopardy); *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (right to counsel).

■■■ The United States Constitution does not guarantee a right to appeal. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The right to appeal a criminal conviction is created by statute. *See* 18 U.S.C. § 3742. The ability to waive statutory rights, like those provided in 18 U.S.C. § 3742, logically flows from the ability to waive constitutional rights. *Teeter*, 257 F.3d at 22; *see also Shutte v. Thompson*, 82 U.S. (15

Wall.) 151, 21 L.Ed. 123 (1873) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit."). If done knowingly and voluntarily, a statutorily created right to appeal is generally held to be waiveable. *Nguyen*, 235 F.3d at 1182 (noting " 'the sole test of a waiver's validity is whether it was made knowingly and voluntarily' ") (quoting *Anglin*, 215 F.3d at 1068). We agree.

Khattak's arguments have been rejected by each appellate court to consider them. Waivers of the legal consequences of unknown future events are commonplace. A defendant waiving a right to trial by jury, for example, waives a procedural protection that might result in a favorable verdict. But the "prospective nature" of waivers has "never been thought to place [waivers] off limits or to render a defendant's act 'unknowing.' " *Teeter*, 257 F.3d at 21. These waivers "preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty." *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992). Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens.

Khattak relies on *United States v. Raynor*, 989 F.Supp. 43, 44 (D.D.C.1997),[5] where the trial court determined a defendant could not knowingly or intelligently waive the right to challenge a yet-imposed sentence, as that might result in an "illegal, unconstitutional or otherwise improper" sentence. *Id.* But by waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the Eleventh Circuit explained:

**5.** Khattak also relied on a district court case from the District of Massachusetts, but that case has been effectively overruled in light of

the First Circuit's recent decision in *Teeter*, 257 F.3d at 14.

A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous.... While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded. *Howle,* 166 F.3d at 1169; *see also United States v. Wenger,* 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences following plea agreements *always* point to unanticipated and unwelcome developments.... To say that a waiver of appeal is effective if and only if the defendant lacks grounds ... is to say that waivers will not be honored.").

Moreover, Khattak's argument ignores that waivers of appeals may assist defendants in making favorable plea bargains. The government often looks favorably on the opportunity to conserve resources necessary to prosecute an appeal, providing defendants a valuable bargaining chip in the plea process. *Teeter,* 257 F.3d at 22 (suggesting the benefit of avoiding a lengthy, costly appeal is "very real," and that "in some cases, the government, without such a waiver, might not be willing to plea-bargain at all"). Furthermore, as in this case, a defendant can bargain for a sentence range or ceiling.

▪ In view of these considerations, we do not believe the waiver of appellate rights in criminal cases contravenes public policy.[6] At the same time, we believe waivers of appeals should be strictly construed. Thus, we hold that waivers of appeals, if entered into knowingly and voluntarily, are valid.

## IV.

▪ Nonetheless, we decline to adopt a blanket rule prohibiting all review of certain otherwise valid waivers of appeals. There may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver. *Cf. Teeter,* 257 F.3d at 25 ("[I]f denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound discretion, may refuse to honor the waiver.").

Some of our sister circuits have delineated specific instances in which waiver-of-appeals provisions may be found invalid. The Court of Appeals for the Fourth Circuit identified two circumstances: if the sentence was "1) imposed in excess of the maximum penalty provide by law or 2) based on a constitutionally impermissible factor such as race." *Brown,* 232 F.3d at 403. The Court of Appeals for the Seventh Circuit held a waiver will not bar appeal if the defendant claims his plea agreement was the product of ineffective assistance of counsel. *United States v. Joiner,* 183 F.3d 635, 645 (7th Cir.1999). The Court of Appeals for the Second Circuit has held provisions that exchange the right to appeal for a specific sentencing range may be too broad to be valid. *United States v. Goodman,* 165 F.3d 169, 174 (2d Cir.1999) ("Where the waiver more broadly purports to waive the right to appeal a sentence within (or below) what-

---

**6.** In this respect, it bears noting the profound changes wrought by the adoption of the Sentencing Reform Act of 1984 and the advent of the sentencing guidelines. One consequence is that criminal sentences in most cases are, at least in part, bargained for; that is, they are negotiated between the defendant and the government. In this sense, the sentencing regime has come to resemble the negotiation of civil settlements, also conducted in the shadow of the law.

ever guideline range the sentencing judge determines is applicable, we have encountered more difficulty.").

█ We choose not to earmark specific situations. Rather, we endorse the First Circuit's approach in *Teeter*, where the Court of Appeals set forth certain factors to consider before "reliev[ing] the defendant of the waiver":

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Teeter*, 257 F.3d at 25–26. These factors provide some guidelines for determining when a particular sentencing error may warrant vacating an otherwise valid waiver of appeal. But the governing standard to apply in these circumstances is whether the error would work a miscarriage of justice.

### V.

█ In determining whether a waiver of appeal is "knowing and voluntary," the role of the sentencing judge is critical. Under Federal Rule of Criminal Procedure 11:

> (c) Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the following:

> . . .

> (6) the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence.

█ Here, the sentencing judge clearly complied with the rule.[7] As noted, the District Court inquired as to Khattak's understanding of his waiver and its effects. *Supra* at 4. Moreover, Khattak received a sentence well within the terms of his plea agreement. "To avoid dismissal of appeal, Defendant must show why we should not enforce the waiver provision of the plea agreement." *Rubio*, 231 F.3d at 711. Khattak presents no set of circumstances that would make his waiver unknowing or involuntary.

### VI.

Waivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice. As noted, waivers of appeals should be strictly construed.

We will enforce Khattak's waiver of his right to appeal. Therefore, we have no jurisdiction to consider the merits of his appeal of the denial of the minor-role adjustment. *See id.* at 711 ("Because we conclude the Defendant knowingly and voluntarily waived his right to appeal, the waiver effectively deprives us of jurisdiction.").

For the foregoing reasons we will affirm the judgment of the District Court.

---

7. As the District Judge made no post-sentencing remarks suggesting rights other than those specified in the agreement, we need not consider cases in which post-sentencing remarks have rendered an otherwise valid waiver unenforceable. *Cf. Fleming,* 239 F.3d 761, 763–64; *Fisher,* 232 F.3d 301, 303–04.