

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2007

# USA v. Snead

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3648

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Snead" (2007). *2007 Decisions*. Paper 790.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/790

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-3648

———

UNITED STATES OF AMERICA

v.

RASHIAD SNEAD,
also known as
SMILEY,

Rashiad Snead,
                    Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00538-1)
District Judge: Hon. James K. Gardner

———

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2007

Before: SLOVITER, HARDIMAN, and ROTH, Circuit Judges

(Filed July 11, 2007)

———

OPINION

———

SLOVITER, Circuit Judge.

Appellant Rashiad Snead appeals from the District Court's order sentencing him to 390 months imprisonment. His primary contention is that the District Court erred in declining to sentence him below the statutory mandatory minimum sentence of thirty-two years. He alleges that the Government discriminated against him on the basis of gender in failing to file a substantial assistance motion under either U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e). He also maintains that the Government selectively prosecuted him in that he was treated more harshly than his two older white female co-defendants.

The Government has filed a motion to enforce the appellate waiver in Snead's plea agreement and to dismiss the appeal. In our recent opinion in United States v. Gwinnett, 483 F.3d 200 (3d Cir. 2007), we rejected the Government's argument that we have no jurisdiction to entertain Snead's appeal. However, because Snead knowingly, voluntarily, and intelligently waived his right to appeal, and no miscarriage of justice would result from enforcing the appellate waiver, we reject Snead's challenges to the sentence imposed by the District Court, and will affirm.

## I.

Within an eight-day period in May 2003, Snead robbed eight grocery stores at gunpoint in the Reading, Pennsylvania area, all of which were engaged in interstate commerce. On all eight occasions, Snead entered the store alone and committed robbery at gunpoint. On some of those occasions, his two co-defendants, Holly Williams and June Chance, waited in an automobile nearby.

2

In seven of the eight instances, Williams drove the automobile to the store to be robbed. Chance generally served as the lookout, and Snead selected items for ostensible purchase, pulled his gun at the cashier, and demanded that the cashier hand over the cash in the register. He then fled the store and was picked up by Williams. The eight stores robbed and the approximate amount of cash taken were: La Chiquita Grocery ($150); Buena Vista Grocery store ($50); Ralph's Food Market ($240); Krick's Corner Store ($1,200); International Deli ($350); Amazana Grocery Store ($300); Bohn Grocery Store ($100); and the El Gallito Store ($350). Snead, Williams and Chance divided the stolen funds.

On August 26, 2003, Snead was indicted on one count of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 (Count One); eight counts of interference with commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Counts Two through Nine); eight counts of using a gun during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts Ten through Seventeen); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Eighteen).

On April 1, 2004, pursuant to a written plea agreement, Snead entered a plea of guilty to Counts One through Nine, Eleven, and Twelve of the indictment. In exchange for the guilty plea, the Government agreed to dismiss Counts Ten and Thirteen through Eighteen of the indictment. The plea agreement contained an appellate waiver in which Snead agreed to waive his rights to appeal or collaterally attack his conviction or sentence

3

"under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." App. at 60.

On September 14, 2004, Snead filed a motion to withdraw his guilty plea. Snead alleged that the Government had discriminated against him on the basis of his gender by entering into more lenient plea agreements with his co-defendants, Williams and Chance. However, on March 31, 2005, Snead withdrew his motion to withdraw his guilty plea. He stated that he was going to pursue a different avenue of attack – he planned to object to the Government's refusal to file a motion under 18 U.S.C. § 3553(e) on his behalf.

Snead was sentenced on July 22, 2005. The District Court first calculated the sentence under the Sentencing Guidelines, noting that with a base offense level of 27 and a criminal history category of IV, the guidelines called for a sentence within the 100-125 month range. However, under 18 U.S.C. § 924(c) Snead's conviction for Counts Eleven and Twelve required mandatory seven- and twenty-five-year sentences respectively, both to be served consecutively to any sentence received on Counts One through Nine. The District Court granted Snead a downward variance on Counts One through Nine, sentencing Snead to only six months imprisonment on those counts, all to run concurrently. The Court then sentenced Snead to the statutory mandatory minium of seven years (eighty-four months) on Count Eleven and the statutory mandatory minimum of twenty-five years on Count Twelve (300 months), both to be served consecutively to any other term imposed. Thus, Snead received 390 months imprisonment, five years of

4

supervised release, and a special assessment.[1]  The Government moved to dismiss Counts

Ten and Thirteen through Eighteen, which the Court granted.

On July 26, 2005, Snead filed a timely notice of appeal.  The Government then

filed a motion to enforce the appellate waiver in Snead's plea agreement and to dismiss

the appeal.

## II.

The Government argues that the appellate waiver should be enforced and Snead's

appeal dismissed for lack of jurisdiction.  However, as we recently clarified in Gwinnett,

this court has subject matter jurisdiction to hear appeals concerning the effects of an

appellate waiver.  483 F.3d at 203 ("this court retains subject matter jurisdiction over the

appeal by a defendant who had signed an appellate waiver").  Nevertheless, if we are

satisfied that Snead knowingly and voluntarily waived his right to an appeal, then we will

not exercise our jurisdiction to review the merits of his appeal unless the result would

work a miscarriage of justice.  See id.; see also United States v. Khattak, 273 F.3d 557,

558 (3d Cir. 2001) (holding as a matter of first impression that "[w]aivers of appeals are

generally permissible if entered into knowingly and voluntarily, unless they work a

miscarriage of justice").

We proceed then to consider whether there is record evidence that Snead

---

[1]    The amount of the special assessment is listed inconsistently in the judgment as $1,000 and/or $1,100.  Compare App. at 259 with App. at 260.

knowingly and voluntarily signed the appellate waiver. The language of the plea agreement which Snead entered pursuant to Rule 11 of the Federal Rules of Criminal Procedure is clear as to its intent to hold Snead and the Government to its provisions. Specifically, the agreement states:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>    a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>    b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may only raise claims that:
>    1.    the defendant's sentence exceeds the statutory maximum; or
>    2.    the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.

App. at 60.

We turn next to the colloquy between the sentencing judge and Snead during the Rule 11 plea agreement hearing. See Gwinnett, 483 F.3d at 204 (quoting Khattak, 273 F.3d at 563, where we stated, "[i]n determining whether a waiver of appeal is 'knowing and voluntary,' the role of the sentencing judge is critical."). At the Rule 11 hearing, the District Court asked Snead a series of questions to determine whether he had entered into the agreement knowingly and voluntarily. The Court asked Snead, for example, "did you hear the [Assistant] United States Attorney [("AUSA")] tell me what the terms and conditions of your plea agreement are?" App. at 74. Further, the Court asked Snead,

6

"Did the [AUSA] tell me fully, completely and accurately all of the terms and conditions of your agreement as you understand them?" Id. Snead answered in the affirmative to both questions. Next, the Court informed Snead that pursuant to his plea agreement:

> you have waived or given up certain of the appeal rights which I've just explained to you. You have waived your right to take any kind of collateral appeal or habeas corpus petition. . . . In addition, you have limited your rights to take a direct appeal from your sentence under your agreement. . . . If . . . the Government does not take a direct appeal, then you can still take a direct appeal on two things, but on nothing else. . . . first, if my sentence is greater than the statutory maximum sentence . . . then you can take a direct appeal . . . and secondly, if I erroneously depart upward from the otherwise applicable sentence guideline range, you can also take a direct appeal from that . . . .

App. at 76-77.

> At the conclusion of the plea hearing the District Court stated the following:

> [I] find that the defendant is fully alert, competent and capable of entering an informed plea, and that each plea is supported by an independent basis in fact containing each of the essential elements of the offenses pled to. In other words, [I] find there to be a factual basis for each of the pleas of guilty. Defendant's pleas of guilty are therefore each accepted, and he is now adjudged guilty of each of those offenses.

App. at 90.

In light of the plea agreement and the plea colloquy, we are satisfied that Snead entered his plea knowingly and voluntarily. There remains the question of whether the Government's sentencing position was unconstitutionally discriminatory, which would, if it were, work a miscarriage of justice.

In Khattak, we declined to adopt a blanket rule prohibiting all review of certain otherwise valid waivers of appeals. We stated: "[t]here may be an unusual circumstance

7

where an error amounting to a miscarriage of justice may invalidate the waiver." 273

F.3d at 562. We endorsed the approach of the Court of Appeals for the First Circuit in

United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), where that court set forth certain

factors to consider before "'reliev[ing] the defendant of the waiver.'" Khattak, 273 F.3d

at 563 (quoting Teeter, 257 F.3d at 25-26). Those factors are:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Id. (quoting Teeter).

In his appeal, Snead contends that the District Court erred in not sentencing him

below the statutory mandatory minimum of thirty-two years. He maintains that the

District Court should not have overlooked the Government's discriminatory behavior in

that the Government failed to make a substantial assistance motion under either U.S.S.G.

§ 5K1.1 or 18 U.S.C. § 3553(e).

In United States v. Wade, the Supreme Court, in considering the Government's

refusal to file a motion pursuant to either U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), stated

that the federal courts have "authority to review a prosecutor's refusal to file a

substantial-assistance motion and to grant a remedy if they find that the refusal was based

on an unconstitutional motive . . . . say because of a defendant's race or religion." 504

U.S. 181, 185-86 (1992). The Supreme Court then stated that a "claim that a defendant

merely provided substantial assistance will not entitle a defendant to a remedy or even to

8

discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive. . . . [A] defendant has no right to discovery or an evidentiary hearing unless he makes a substantial threshold showing." Id. at 186 (internal citations and quotation marks omitted).

Taken in tandem then, Khattak and Wade stand for the proposition that an appellate waiver may be vitiated and this court may consider a defendant's appeal if a miscarriage of justice would occur in enforcing the appellate waiver; such a miscarriage of justice could include a refusal on the Government's part to file a substantial-assistance motion. However, just as Wade failed to "[allege], much less [claim] to have evidence tending to show, that the Government refused to file a motion for suspect reasons such as his race or religion," 504 U.S. at 186, similarly Snead has failed to demonstrate, although he did allege, the requisite "substantial threshold showing" of unconstitutional motive on the basis of gender. Briefly stated, the fact that Snead received a far harsher sentence than his co-defendants does not evidence unconstitutional motive on the Government's part. A criminal defendant has no constitutional right to be given a sentence equal in duration to that of his co-defendants. United States v. Hart, 273 F.3d 363, 379 (3d Cir. 2001). As the District Court stated, Snead:

> brandished the gun in these robberies, they did not. He grabbed the customer in one of these robberies; the co-defendants did not. He shoved the gun in the chest of one of the grocers in one of these robberies; the co-defendants did not. He demanded the money; the co-defendants did not. He threatened to kill at least one of the grocers; the co-defendants did not.

App. at 238.

9

## III.

In light of the foregoing, and our conclusion that Snead has not shown a miscarriage of justice, we will enforce the appellate waiver, thereby affirming the sentence of the District Court.