UNITED STATES of America

v.

Sean NELSON, Appellant.

No. 07–4721.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a), Jan. 26, 2010.

Opinion Filed: March 23, 2010.

George S. Leone, Esq., Caroline A. Sadlowski, Esq., Office of United States Attorney, Newark, NJ, for United States of America.

Brian S. O'Malley, Esq., Haddon Heights, NJ, for Appellant.

Before: FUENTES and FISHER, Circuit Judges and KANE,* District Judge.

OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant, Sean Nelson, pled guilty to conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. In the written plea agreement, Nelson waived his right to appeal if his sentence fell within a specified Guidelines range. At sentencing, the District Court imposed a sentence within that range. Nelson appeals from the District Court's Judgment, arguing that his appellate waiver should not be enforced as it would work a "miscarriage of justice." In particular, Nelson contends that the impeachment of a witness who testified on his behalf at sentencing was unforeseen

---

* Honorable Yvette Kane, Chief United States District Court Judge for the Middle District of Pennsylvania, sitting by designation.

and that certain hearsay statements made by the Government exposed the District Court to extremely prejudicial information, rendering his sentencing proceeding unfair. For the reasons that follow, we will enforce Nelson's waiver of his appellate rights, decline to reach the merits of his appeal, and affirm the District Court's Judgment.[1]

## I.

Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for the resolution of the case.

Nelson pled guilty to conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine and fifty kilograms or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). In his plea agreement, Nelson waived his right to appeal if his "sentence f[ell] within or below the Guidelines range that results from a total Guidelines offense level of 29." (App.14.) At the change of plea hearing, the District Court specifically questioned Nelson about the appellate waiver contained in the plea agreement, and Nelson confirmed that he understood the effect of the waiver. (*Id.* at 43–45.)

At the sentencing hearing, defense counsel noted that a number of Nelson's family members were present; the District Court asked if any of them would like to speak, and defense counsel repeated the District Court's question. (*Id.* at 61.) Vincent Perry, Nelson's stepfather, volunteered to speak and asked for leniency on Nelson's behalf. Relevant to this appeal, in response to a question from the District Court, Perry stated that he did not know that Nelson was "dealing in crack cocaine." (*Id.* at 63.) Defense counsel briefly alluded to Perry's remarks in his closing statement.

After Nelson finished speaking, the Government asked for a conference at sidebar and reported that Perry had been cooperating with the Government and that, contrary to his testimony, he knew of Nelson's involvement in drug trafficking. The Government explained as follows:

> Vincent Perry told the Court some things that we don't believe to be true when he told us that he didn't know anything about Sean Nelson being involved in drugs, that is, he's been cooperating with the government and he has given explicit information about ... Sean Nelson's involvement in drug trafficking over the years. Some of the information he's given us included that ... Sean [was] involved in distributing crack since at least 2003. And he talked very specifically about one incident where he drove Sean Nelson to Felipe Telleria's house, he described the house and described the car and it's an incident that happened in 2006 and that incident was captured on the wiretap. Now, the agents did not see Vincent Perry on the surveillance from the pole camera, but they did see the car he described during that transaction. He said Sean Nelson bought nine ounces of cocaine from Felipe Telleria, and that comports with several of the calls that we have on the wiretaps that were going on that summer.

---

1. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "A defendant's valid appellate waiver does not deprive this Court of jurisdiction over the defendant's claims, and we retain subject matter jurisdiction over the defendant's appeal despite the waiver." *United States v. Jackson,* 523 F.3d 234, 242 (3d Cir.2008) (citation omitted). "We examine the legality of waiver-of-appeals provisions de novo, as it is a question of law." *United States v. Khattak,* 273 F.3d 557, 560 (3d Cir. 2001) (citation omitted).

So as much as I didn't want to bring this up, and I certainly don't want to make this a matter of public consumption because his cooperation has been ongoing, although I'm not sure what the effect of this will be, it has to be sorted out, he's been a cooperator with the state, ... we wouldn't want it to come out publicly, but I don't want the record to stand now, as it was with the Court, and the Court thinking that Mr. Perry was unaware of his stepson's drug trafficking.

(*Id.* at 80–81.)

The District Court asked the Government whether it "should ask [Perry] if he wants to change any of his statements to me about his lack of knowledge, or does that just dig things deeper?" (*Id.* at 81.) The Government replied that such a question "would dig things deeper" because the courtroom was "full of drug dealers" and "it might be dangerous" for Perry. (*Id.*) After further discussion with counsel, the District Court stated that "I'm not going to hold it against Sean Nelson in any way, pretty much what Mr. Perry has said." (*Id.* at 82.) Defense counsel responded to the District Court' statement, and the Court reiterated that it would not consider Perry's statements in sentencing Nelson:

I think the important thing is that the defendant's rights be preserved in all of this and that I continue to believe that he should be sentenced for the information that I have before me and nothing more, nothing less. ... And that means, I'll be more explicit, that his stepfather, whether he had information about the drug dealing or didn't, adds nothing in that regard to what I'm sentencing Mr. Nelson for and that is what he pled guilty to.

(*Id.* at 83.)

Nelson was subject to a statutory mandatory minimum sentence of 120 months' imprisonment. The District Court concluded, however, that Nelson qualified for the "safety valve" provision of 18 U.S.C. § 3553(f) and could be sentenced under the mandatory minimum. With a total offense level of 27 and a criminal history category of I, Nelson's advisory Guidelines range was 70 to 87 months. The District Court imposed a sentence of 78 months' imprisonment.

On appeal, Nelson argues that this Court should not enforce his appellate waiver as it would work a manifest injustice by preventing him from challenging the fairness of his sentencing proceeding. He further argues that the District Court committed plain error in failing to order the Government to turn over Perry's prior inconsistent statements.

## II.

"Waivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir.2001). Nelson does not argue that his waiver was unknowing or involuntary, instead asserting that its enforcement would result in a miscarriage of justice. Factors to consider before "'reliev[ing] the defendant of the waiver'" to prevent a miscarriage of justice include "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id.* (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir.2001)).

Nelson argues that the District Court was exposed to "extremely prejudicial information," specifically the Government's hearsay statement that, according to Perry, Nelson distributed crack cocaine since "at least 2003" when Nelson had only ad-

mitted to a conspiracy from July 2004 to July 2006. (Nelson Br. 9–10.) The Government's use of hearsay to impeach Perry at sidebar does not constitute the type of "unusual circumstance [of] an error amounting to a miscarriage of justice" contemplated by *Khattak*. Although Perry's testimony and the Government's response at sidebar were unforeseen by the parties, allowing Nelson's sentence to stand unchallenged does not work a miscarriage of justice, particularly in light of the District Court's statement that it would not consider Perry's statement regarding his lack of knowledge of Nelson's drug trafficking nor the Government's impeachment evidence in arriving at Nelson's sentence. Accordingly, we conclude that Nelson waived his right to the present appeal, and we do not reach the merits of his remaining claim.

### III.

For the foregoing reasons, we affirm the District Court's Judgment.