**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2581
_____

UNITED STATES OF AMERICA

v.

SANDERLEI ALVES DACRUZ
a/k/a
"Kauan"
a/k/a
"Kauan Santana"
a/k/a
"Sidney Gomes Figueredo"

Sanderlei Alves Dacruz,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 12-cr-00438-001)
District Judge: Honorable Joseph H. Rodriguez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 21, 2014
_____

Before: FUENTES, FISHER, *Circuit Judges*, and JONES, *District Judge*[1]

(Filed: February 7, 2014)

_____

[1] The Honorable C. Darnell Jones, II, U.S. District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

In this appeal, Sanderlei DaCruz challenges the reasonableness and procedural

soundness of his 51-month sentence for conspiracy to smuggle unlawful aliens contrary

to 8 U.S.C. § 1324(a)(1)(A)(i), and in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). For the

reasons set forth below, we affirm.

I.

On June 5, 2009, DaCruz, a Brazilian national, pleaded guilty in the Western

District of Texas to illegal reentry in violation of 8 U.S.C. § 1326(a). On July 23, 2009,

DaCruz was sentenced to time-served of 73 days,[2] followed by one year of supervised

release. The judgment was entered on July 31, 2009. DaCruz was removed to Brazil on

September 10, 2009. His term of supervised release expired on July 31, 2010.

In regard to this case, DaCruz was arrested on June 10, 2011. On December 19,

2012, he pleaded guilty, following a plea agreement, to conspiracy to smuggle unlawful

aliens, contrary to 8 U.S.C. § 1324(a)(1)(A)(i), and in violation of 8 U.S.C.

§ 1324(a)(1)(A)(v)(I). At his sentencing, DaCruz admitted to having been involved in the

conspiracy relating to these charges since at least the end of 2009. The plea agreement

stipulated that the total offense level was 22. Part of the calculation of the total offense

_____

[2] The government argues that DaCruz's prior sentence of imprisonment amounted to 86
days. Because the specific number of days is irrelevant to the disposition of this matter,
we will assume the facts in the light most favorable to DaCruz.

level in the plea agreement imposed a 2-point increase under U.S.S.G. § 2L1.1(b)(3)(A) because DaCruz "committed … part of the instant offense after sustaining . . . a conviction for a felony immigration and naturalization offense." *Id*.; see App. at 28; the offense that triggered this increase was DaCruz's 2009 conviction for illegal reentry. The parties agreed not to seek or argue for any departure, adjustment, or variance not set forth in the plea agreement, and they agreed that "a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 22 is reasonable." App. at 29. As part of the agreement, DaCruz "voluntarily waive[d][] the right to file any appeal . . . which challenges the reasonableness of a sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 22." *Id*.

The District Court calculated DaCruz's criminal history category to be III based on two provisions of the Guidelines. It imposed 2 points pursuant to U.S.S.G. § 4A1.1(d) because DaCruz "committed the instant offense while under . . . supervised release . . .," *id*., and assigned 2 points under U.S.S.G. § 4A1.1.(b) because DaCruz served "a prior sentence of imprisonment of at least sixty days," *id*. The supervised release, as well as the term of imprisonment, stemmed from DaCruz's 2009 conviction discussed above. These four points convert to a criminal history category of III.

Despite the plea agreement, DaCruz argued for a downward departure under § 4A1.3(b)(1), which states that "[i]f reliable information indicates that the criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward

3

departure may be warranted." U.S.S.G.§ 4A1.3(b)(1). The District Court addressed and denied DaCruz's request for a downward departure on the merits.

Combining a criminal history category of III and a total offense level of 22, the District Court calculated DaCruz's advisory Guidelines range as 51-63 months. After hearing DaCruz's arguments as to the sentencing factors under 18 U.S.C. § 3553(a), the District Court imposed a sentence of 51 months imprisonment.

II.

DaCruz presents three arguments on appeal. First, on the procedural front, he argues that the calculation of his criminal history category as III was improper. Second, he argues that the District Court erred in denying his request for a downward departure. Finally, he argues that the District Court's imposition of sentence was substantively unreasonable. We will address these arguments in turn.

**A. Calculation of DaCruz's criminal history category**

DaCruz raises essentially three arguments that his criminal history was incorrectly calculated. None have merit.

First, he argues that the District Court should not have added two points under U.S.S.G. § 4A1.1(b) because this overstated his criminal history category. Section 4A1.1(b) states "[a]dd **2** points for each prior sentence of imprisonment of at least sixty days . . ." In this case, the District Court added 2 points for DaCruz's conviction for illegal reentry under 8 U.S.C. § 1326(a), for which DaCruz served 73 days in custody. Because DaCruz's time of imprisonment was close to 60 days, he argues that this guideline should not have applied. This is incorrect. Section § 4A1.1(b) does not

4

allow the court discretion not to apply these points, and District Courts "'must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.'" *United States v. Grier*, 475 F.3d 556, 608 (3d Cir. 2008) (en banc) (quoting *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)).

Next, DaCruz argues that 2 points should not have been added under U.S.S.G. § 4A1.1(d), which says, "[a]dd **2** points if the defendant committed the instant offense while under any criminal justice sentence, including . . . supervised release." *Id*. DaCruz argues that he was not on supervised release at the time he committed this offense because he was not being supervised by probation for his earlier offense when his offense conduct for this case occurred.

Whether DaCruz was being actively supervised at the time of the offense conduct related to this case is irrelevant: the application notes of U.S.S.G. § 4A1.1(d) say that "active supervision is not required for this subsection to apply." *Id*., Application Note 4. DaCruz's period of supervised release lasted until July 31, 2010, because removal does not automatically extinguish supervised release. *United States v. Williams*, 369 F.3d 250, 253 (3d Cir. 2004). In fact, we have before decided that it is not within the District Court's discretion to toll a period of supervised release following removal. *United States v. Cole*, 567 F.3d 110, 116 (3d Cir. 2009). Because DaCruz admitted to involvement in the conspiracy in late 2009, and because his supervised release term ran from July 31, 2009 to July 31, 2010, at least part of his offense conduct admittedly occurred while he was on supervised release.

5

DaCruz's final argument is that it was impermissible triple counting for the District Court to add 2 points under U.S.S.G. § 4A1.1(b) and 2 points under U.S.S.G. § 4A1.1(d), on top of the 2 points added to his total offense level under U.S.S.G. § 2L1.1(b)(3)(A) pursuant to the plea agreement. His argument is premised on the notion that, since all three of these Guidelines provisions are meant to punish repeat offenders, and since each set of points related to the same 2009 conviction, it was impermissible to calculate the criminal history in this fashion. The argument is meritless. As for the interaction between U.S.S.G. § 2L1.1(b)(3)(A) and § 4A1.1(b), the application notes to § 2L1.1 indicate that, "Prior felony conviction(s) resulting in an adjustment under subsection (b)(3) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)." U.S.S.G. § 2L1.1, Application Note 4. DaCruz does not explain how adding points for committing this crime while on supervised release under § 4A1.1(d) conflicts with the other two provisions.

In sum, the District Court correctly calculated DaCruz's criminal history category at III.

### B. Downward Departure

DaCruz also argues that the District Court erred by failing to depart downward pursuant to § 4A1.3(b)(1). Specifically, he argues that the criminal history category of III overstated the seriousness of his prior offense because he only spent a short time over 60 days in prison. In the plea agreement, DaCruz waived arguments regarding any downward departures not specified in the agreement. This departure was not in the agreement. Nevertheless, the District Court addressed his motion for a downward

6

departure, and denied it. Because we lack appellate "jurisdiction to review discretionary decisions by district courts not to depart downward," *United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007), *abrogated on other grounds by United States v. Arrelucea-Zamudio*, 581 F.3d 142, 147 (3d Cir. 2009), this argument must fail.

**C. 18 U.S.C. § 3553(a) factors**

DaCruz argues that the District Court erred in its analysis of the 18 U.S.C. § 3553(a) factors resulting in a sentence that was substantively unreasonable. Specifically, he contends that the District Court failed to avoid unnecessary sentencing disparities. The government responds that, as part of the plea agreement, DaCruz agreed that "a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 22 is reasonable." App. at 29. Moreover, DaCruz "voluntarily waive[d][] the right to file any appeal . . . which challenges the reasonableness of a sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 22." *Id*. A criminal history category of III and a total offense level, as stipulated, of 22, results in a Guidelines range of 51-63 months, and the District Court imposed a sentence of 51 months, within that Guidelines range. Accordingly, DaCruz received a sentence within the terms of the plea agreement. Because DaCruz has offered no argument as to why we should not enforce the waiver provision of his plea agreement, we also lack jurisdiction

to consider the merits of his appeal on this ground. *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).[3]

## III.

For the foregoing reasons, we affirm the judgment of sentence of 51 months imposed by the District Court.

---

[3] "Khattak received a sentence well within the terms of his plea agreement. To avoid dismissal of appeal, Defendant must show why we should not enforce the waiver provision of the plea agreement. Khattak presents no set of circumstances that would make his waiver unknowing or involuntary. . . .We will enforce Khattak's waiver of his right to appeal. Therefore, we have no jurisdiction to consider the merits of his appeal of the denial of the minor-role adjustment." *Khattak* , 273 F.3d at 563 (citation and internal quotation marks omitted).