**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1602
_____

UNITED STATES OF AMERICA

v.

ROCCO AMERICO MALANGA,

                Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-22-cr-00438-001)
District Judge: Honorable Julien X. Neals

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on May 9, 2024

Before: MATEY, MONTGOMERY-REEVES and ROTH, Circuit Judges

(Opinion filed: September 3, 2024)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

Rocco Malanga pleaded guilty to bank fraud and money laundering in connection with his application for loans through the Paycheck Protection Program (PPP). On appeal, he argues the District Court erred in its loss calculation and in failing to properly consider certain factors under § 3553(a). We will affirm the District Court's judgment of sentence.

## I. Background

Malanga applied for and received over $1.8 million in loans through the PPP.[1] In order to secure those loans, he represented to lenders that three companies under his control employed 118 people over the previous year.[2] In reality, only one of those companies had employed anyone over that time, and it had only four employees on its payroll.[3] Altogether, Malanga's companies were eligible to receive roughly $22,000 through the PPP based on their actual employee headcounts. Thus, Malanga falsified tax documents to show wages for 114 employees who did not exist.

Malanga maintains that he spent the entirety of the PPP loans on business-related expenses, including nearly $1.6 million in payments to independent truckers. However, he also admits that those truckers were not W-2 employees or 1099 contractors of any of his

---

[1] Congress established the PPP under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. Pub. L. No. 116-136 § 1102 (2020). The PPP authorized lenders to make up to $649 billion of SBA-backed loans to small businesses to maintain existing payrolls and meet mortgage, rent, and utilities payments.

[2] The companies included Cloud Accounting LLC, which received $564,632; Cedar Grove Transportation, Inc, which received $441,260; and Pixie Hollow, LLC, which received $810,294. Malanga changed the name of Cloud Accounting LLC to Cedar Grove Ventures LLC and consolidated various loans in its bank accounts.

[3] Florida Department of Revenue and IRS records identified Cedar Grove Transportation, Inc and Pixie Hollow, LLC as inactive during that year.

companies that applied for the loans.[4]  Moreover, upon receipt of each loan, Malanga used the companies to pay salaries to his wife and children, even though they had minimal involvement with the businesses.  He also used the companies' bank accounts to purchase groceries, luxury goods, firearms, and electronics for himself and his family.

Malanga pleaded guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 and one count of money laundering in violation of 18 U.S.C. § 1957.  As part of his plea, Malanga waived his right to appeal except as to the final determination of the loss amount under U.S.S.G. § 2B1.1(b)(1).  The Probation Office calculated a loss amount of more than $1.8 million, a total offense level of 23, and a guidelines range of 46–57 months.  The District Court subsequently adopted the loss amount over Malanga's objections.  After considering the § 3553(a) factors, the District Court departed downwards from the guidelines range and sentenced Malanga to 36 months' imprisonment.  Malanga appealed.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We review de novo the District Court's calculation of the loss amount[5] and the validity of an appellate waiver.[6]

---

[4] By Malanga's own description, his constellation of companies acted as a "bridge" between customers and independent truckers who needed payment on a faster timeline than provided for in traditional trucking contracts.  Specifically, they offered logistical support and immediate payment to the truckers, and in exchange received the payments that the customers would have made to the truckers.

[5] *United States v. Kousisis*, 82 F.4th 230, 244 (3d Cir. 2023) ("When the calculation of the correct Guidelines range turns on an interpretation of what constitutes loss under the Guidelines, we exercise plenary review." (internal quotations omitted)).

[6] *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

## III. Discussion

Malanga argues that the District Court erred when it calculated a loss of more than $1.8 million, based on the amount of loans he received through the PPP. He also argues that we should invalidate his appellate waiver because the District Court failed to properly weigh certain factors under 18 U.S.C. § 3553(a). Neither claim has merit.

*First*, our decision in *United States v. Banks*[7] disproves Malanga's argument that he did not cause a loss under U.S.S.G. § 2B1.1(b). In *Banks*, we held that "loss" as used in that section unambiguously refers to the "loss the victim actually suffered," rather than the loss intended by the defendant.[8] The actual loss Malanga caused was the amount of loans his companies fraudulently received under the PPP. Had Malanga not submitted falsified loan applications, his lenders would have had over $1.8 million more to lend to legitimately qualified borrowers or to use for other purposes.[9] *Banks* also precludes Malanga's claim that he did not cause any loss because he intended to repay his loans in full.[10]

---

[7] 55 F.4th 246 (3d Cir. 2022).

[8] *Id.* at 258; *see also id.* at 256–58 (collecting definitions of "loss," including the "decrease in amount, magnitude, or degree" and "[d]iminution of one's possessions or advantages"). Because we have held that the guideline is unambiguous, we need not take up the parties' arguments based on the commentary to the guidelines. *See United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021) (en banc).

[9] Malanga argues that the court failed to make any findings of causation between his conduct and that loss, but his fraudulent loan applications unquestionably resulted in the diminution of the banks' funds.

[10] We are likewise unmoved by Malanga's argument that he did not cause any loss because he tried to repay the loans after his arrest. *Cf. United States v. Shaffer*, 35 F.3d 110, 114–15 (3d Cir. 1994) (calculating the actual loss caused by bank fraud at the time the fraud was detected rather than at the time of sentencing).

We reject Malanga's argument that he did not cause any loss because his use of the loans broadly aligned with the purpose of the PPP. Malanga relies on cases in which the defendants won government contracts through fraud, and the courts deducted the value of the services the defendants rendered under the contracts from the final loss amounts. He urges us to adopt a similar approach here, but we have distinguished government contracts from government loans. In procurement contracts, the government receives services in exchange for payment by the other party, whereas government benefits such as loans are essentially unilateral.[11] The precedent he cites in thus inapposite, and we will not extend it to the facts of his case.[12]

*Second*, Malanga's appellate waiver is valid and therefore bars his claim regarding the court's application of § 3553(a). We enforce a knowing and voluntary appellate waiver if doing so would not work a miscarriage of justice.[13] Here, the record proves that Malanga understood he was waiving his appellate rights: his plea agreement acknowledged that he had discussed the waiver with counsel, and he confirmed the same at his plea hearing.

Nor would enforcing his appellate waiver work a miscarriage of justice. Malanga argues that it would because the District Court failed to properly consider, under §§ 3553(a)(1) and (6), the need to avoid unwarranted sentencing disparities and his family

---

[11] *See Kousisis*, 82 F.4th at 248.

[12] Even if we assume that a defendant can mitigate the losses that result from fraudulent loan applications by fulfilling the loan program's policy objectives, Malanga did not do so. As Malanga concedes, he did not use the loans to retain employees or cover the kinds of costs contemplated by the PPP, but rather paid independent truckers who were neither W-2 employees nor 1099 contractors of the companies that applied for the funds. He also diverted a portion of the loans to underwrite an expansion of his business.

[13] *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001).

members' medical conditions. The court did consider those factors, and Malanga's argument concerns the weight they were afforded. For that reason, we construe his claim as a substantive rather than a procedural challenge to his sentence.[14] However, "it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice."[15] Malanga offers no basis for us to conclude that his case presents such a miscarriage.

Indeed, Malanga fails to show that his sentence is substantively unreasonable. His sentence falls ten months below the lower bound of the guidelines range. We may presume it is reasonable.[16] Malanga neither rebuts that presumption nor explains why "no reasonable sentencing court would have imposed the same sentence."[17] He merely asserts that the District Court improperly weighed §§ 3553(a)(1) and (6). However, mere "failure to give mitigating factors the weight a defendant contends they deserve does not make a sentence substantively unreasonable."[18] Thus, we will enforce his waiver.

---

[14] *United States v. Seibert*, 971 F.3d 396, 401 n.4 (3d Cir. 2020). At times, Malanga seems to argue that the District Court did not consider factors under § 3553(a), but the record belies that argument. Otherwise, he alleges no procedural errors for our review.

[15] *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir. 2008).

[16] *United States v. Handerhan*, 739 F.3d 114, 124 (3d Cir. 2014).

[17] *United States v. Lacerda*, 958 F.3d 196, 215 (3d Cir. 2020).

[18] *Seibert*, 971 F.3d at 402 (cleaned up).

## IV. Conclusion

For these reasons, we will affirm the District Court's judgment of sentence.[19]

---

[19] Judge Matey would vacate and remand for the District Court to reconsider its loss calculation under U.S.S.G. § 2B1.1(b). The United States argued before the District Court that Malanga's lenders suffered losses as the victim of his actions. And to Judge Matey, *United States v. Kopp*, 951 F.2d 521 (3d Cir. 1991) requires the United States to offer facts sufficient to calculate the loss to those lenders. Although Application Note 3(F)(ii) to U.S.S.G. § 2B1.1 provides that "[i]n a case involving government benefits (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the case may be," resort to the commentary appended to § 2B1.1 is impermissible. *See United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022).