**UNITED STATES of America**

v.

**Jacqulyn JACKSON, Appellant.**

**No. 06–5205.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 13, 2008.

Filed: April 21, 2008.

---

James J. Brink, Esq., Pittsburgh, PA, for Appellant.

Mary Beth Buchanan, Esq., Rebecca Ross Haywood, Esq., Office of United States Attorney, Pittsburgh, PA, for Appellee.

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Appellant Jacqulyn Jackson appeals the District Court's December 22, 2006 Judgment of Sentence. Following her guilty plea to one count of making false statements to police, Jackson was sentenced to six months of imprisonment and three years of supervised release. Jackson, who was released from prison during the pendency of this appeal, argued in her opening brief that this sentence is unreasonable.

## I. FACTS

Appellant Jacqulyn Jackson was charged with making false statements to police in violation of 18 U.S.C. § 1001(a)(2). According to the facts adduced at the plea hearing and contained in the Pre–Sentence Report (PSR), Jackson attempted to obtain possession of a car seized by police following a high-speed chase; she claimed the car belonged to her and that she had reported it stolen after lending it to a friend who never returned it. In fact, Jackson knew her husband, whom police were investigating for drug trafficking, had borrowed the car and had abandoned it after being chased by the police.

On September 26, 2006, Jackson entered into a plea agreement with the Government. According to the plea agreement, Jackson waived her right to appeal the District Court's sentence unless the Government filed an appeal first, the sentence exceeded the statutory maximum for the offense to which she pled guilty, or the sentence unreasonably exceeded the Guidelines range determined by the District Court. *See* App. at 19. Following a hearing to determine whether her plea was knowing and voluntary, Jackson formally pled guilty to the charge.

The PSR, which was prepared following Jackson's guilty plea, assigned a criminal history score of I and an offense level score of 4 after a two-level downward adjustment for substantial assistance. Given these scores, Jackson's advisory Guidelines range was 0–6 months. This meant the advisory Guidelines called for up to six months of imprisonment, or a term of no more than three years of probation under U.S.S.G. § 5B 1.2(a)(2). The advisory Guidelines range called for a term of supervised release of at least two years, but not more than three years, which was the

statutory maximum. *See* 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a)(2).

On December 22, 2006, after hearing arguments from both sides, including Jackson's argument that she should be sentenced to probation, the District Court imposed a sentence of six-months' imprisonment. This term of imprisonment was to be followed by a three-year term of supervised release. Jackson filed a timely appeal, arguing that her sentence was unreasonable because the District Court did not give sufficient consideration to whether she should be sentenced to probation.

On February 25, 2008, this Court directed the parties to file supplemental letter-briefs addressing whether Jackson's appeal was moot in light of the fact that she was to be released from prison the following day. On February 26, 2008, as scheduled, Jackson was released from prison, having completed her sentence of imprisonment. The United States Attorney filed a letter-brief in accordance with this Court's request on March 4, 2008, and counsel for Jackson responded to our request on March 26, 2008.

## II.  JURISDICTION

The District Court for the Western District of Pennsylvania had subject matter jurisdiction under 18 U.S.C. § 3231. Jackson's appeal was timely filed under Federal Rule of Appellate Procedure 4(b)(1) because it was filed within ten days of the District Court's final judgment of sentence. Provided there is a live case or controversy in this matter, this Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). We review the validity of appellate waivers *de novo*. *See United States v. Khattak*, 273 F.3d 557, 560 (3d Cir.2001).

## III.  DISCUSSION

### A.

■ We would normally begin our analysis by discussing whether Jackson, by entering into the plea agreement, has waived her ability to appeal. However, we must first determine whether we have jurisdiction to hear Jackson's appeal in this matter. We are required to confront a question about our jurisdiction before we can proceed to the question of whether Jackson's waiver is enforceable. *See, e.g., United States v. Pantelidis*, 335 F.3d 226, 232 (3d Cir.2003). On appeal, Jackson challenges only the reasonableness of her sentence. She is currently serving a term of supervised release that began when she was released from prison on February 26, 2008. These facts raise substantial questions about our jurisdiction, including whether this matter presents the live case or controversy required by Article III of the Constitution.

In *Spencer v. Kemna*, the United States Supreme Court confronted the question of whether jurisdiction exists over a defendant's appeal of his parole revocation, where the appeal reaches the appellate court after the defendant has served his sentence. The Court stated that:

> This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a personal stake in the outcome of the lawsuit. This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.... An incarcerated convict's (or a parolee's) challenge to the validity of his *conviction* always satisfies the case-or-controversy requirement because the incarceration (or the restric-

tion imposed by the terms of the parole) constitutes a concrete injury, caused by the *conviction* and redressable by invalidation of the *conviction*.... In recent decades, we have been willing to presume that a wrongful criminal *conviction* has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur). *Spencer*, 523 U.S. at 7, 118 S.Ct. 978 (citations omitted) (emphasis added). The defendant in *Spencer*, who was challenging the revocation of his parole, had completed the term of imprisonment imposed as a result of the parole violation by the time the District Court ruled on his habeas corpus petition. *See id.* at 5–6, 118 S.Ct. 978. The Supreme Court held that the presumption that criminal convictions have collateral consequences did not extend to revocations of parole. *See id.* at 12–14, 118 S.Ct. 978. In light of this holding, the Court affirmed the dismissal of Spencer's appeal as moot. *See id.* at 18, 118 S.Ct. 978. Accordingly, and in light of Spencer, there is no presumption of collateral consequences once the defendant is released if he challenges the revocation of his parole. *See id.* at 12–14, 118 S.Ct. 978. In such a case, the defendant must demonstrate that collateral consequences exist or jurisdiction will be lacking. *See id.* at 14, 118 S.Ct. 978.

A subsequent decision of our Court extended this holding to situations involving revocation of probation. *See United States v. Kissinger,* 309 F.3d 179, 181–82 (3d Cir.2002). The defendant in *Kissinger* had been sentenced to one year of probation; he later received a sentence of three-months' imprisonment and a new probationary term for violating his original probation. *See id.* at 180. The defendant challenged the "imposition and administration" of a condition of his new term of probation. *See id.* While the defendant's

appeal was pending, he completed his three-month imprisonment term and all probationary terms. Accordingly, this Court held that he must demonstrate that collateral consequences existed or risk having his appeal dismissed as moot. *See id.* at 181–82. Because Kissinger could not point to any sufficient collateral consequence, his appeal was dismissed as moot. *See id.* at 183. In dismissing Kissinger's appeal, this Court specifically rejected the argument that one collateral consequence of an erroneous parole revocation was the possibility that it could impact some future sentence, noting that *"Spencer* rejected this collateral consequence." *Id.* at 182. In our opinion in *Kissinger,* this Court referred to cases from other circuits holding that *Spencer*'s limitation on the reach of the presumption of collateral consequences also applied to challenges to revocations of supervised release. *See id.* at 181.

In *United States v. Cottman,* the defendant's appeal challenged the method of calculating the sentence that was imposed for his violation of 18 U.S.C. § 371. *See United States v. Cottman,* 142 F.3d 160, 163–64 (3d Cir.1998). Cottman claimed that an improper four-point upward adjustment under the Guidelines precluded the District Court from sentencing him to probation. *See id.* at 164–65. Cottman had completed his ten-month term of imprisonment and was serving a three-year term of supervised release at the time of his appeal. This Court held that although Cottman had completed his term of imprisonment, "a finding of mootness [was] forestalled ... because Cottman [might] still suffer 'collateral legal consequences' from a sentence already served." *Id.* at 164. The main basis for this Court's determination that collateral consequences might exist was that a reduction in Cottman's Guidelines sentencing range "would likely

merit a credit against Cottman's term of supervised release for the excess term of imprisonment to which Cottman was subjected." *Id.* at 165. The Court also mentioned the possibility that Cottman might commit and be convicted of some future federal criminal offense, and that his future sentence could be impacted by Cottman's acquisition of an additional criminal history point. *See id.* The panel in *Cottman* made no mention of the Supreme Court's decision in *Spencer.*[1]

Subsequent to the Supreme Court's decision in *Spencer* and our decision in *Cottman,* the Supreme Court decided *United States v. Johnson,* 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). The defendant in *Johnson* had been sentenced to a 171–month prison term, which consisted of three concurrent 51–month terms to be followed by two consecutive 60–month prison terms. *See Johnson,* 529 U.S. at 54–55, 120 S.Ct. 1114. Upon review, the convictions supporting the two 60–month sentences were vacated, and Johnson's sentence was reduced to 51 months. *See id.* at 55, 120 S.Ct. 1114. As Johnson had already served more than 51 months in prison, he was released to begin serving his mandatory three-year term of supervised release. *See id.* Johnson argued that he should have been given credit against his supervised release term for the excess time he spent in prison. *See id.* at 55–56, 120 S.Ct. 1114. In rejecting this argument, the Supreme Court held that "a supervised release term does not commence until an individual is 'released from

imprisonment.'" *Id.* at 57, 120 S.Ct. 1114. It is argued that this holding casts doubt upon the rationale in *Cottman* that a likely credit against a defendant's term of supervised release gives us jurisdiction. However, this argument ignores the express language in *Johnson* that:

> There can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term. The statutory structure provides a means to address these concerns in large part. The trial court, as it sees fit, may modify an individual's conditions of supervised release. [18 U.S.C.] § 3583(e)(2). Furthermore, the court may terminate an individual's supervised release obligations "at any time after the expiration of one year ... if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." [18 U.S.C.] § 3583(e)(1). Respondent may invoke [18 U.S.C.] § 3583(e)(2) in pursuit of relief; and, having completed one year of supervised release, he may also seek relief under [18 U.S.C.] § 3583(e)(1).

*Id.* at 60, 120 S.Ct. 1114. Accordingly, a likely credit against a defendant's term of supervised release for an excess term of imprisonment still remains valid after *Johnson.* We also note that Johnson involved a mandatory term of supervised release, whereas Cottman did not. *See id.* at 55, 120 S.Ct. 1114.

---

1. As noted, *Spencer* provides a presumption of collateral consequences where the defendant challenges his *conviction* after he has served his prison sentence. *See Spencer,* 523 U.S. at 9–11, 118 S.Ct. 978. *Spencer* declined to extend that presumption beyond challenges to a conviction, however. *See id.* at 12, 118 S.Ct. 978. In *Cottman,* the defendant was on supervised release, but he challenged only his *sentence,* not his *conviction.* *See Cottman,*

142 F.3d at 163. Accordingly, there was no presumption of collateral consequences as set forth in *Spencer.* *Spencer* did, however, reject the impact of a conviction upon possible future federal criminal convictions and sentences as a collateral consequence sufficient to create a case or controversy under Article III. *See Spencer,* 523 U.S. at 13–15, 118 S.Ct. 978.

The other factor mentioned by this Court in *Cottman*, the possible collateral consequence of a sentencing error impacting a future federal criminal conviction and sentence, has been discredited by the Supreme Court and other circuits. In *Spencer*, the appellant's contentions that alleged errors might affect him in the future were he to be convicted of a new crime or were they to be used to impeach his testimony at a later trial were found to be too speculative to be considered collateral consequences. *See Spencer*, 523 U.S. at 13–16, 118 S.Ct. 978. In *Kissinger*, our Circuit held that the appellant's argument that his "allegedly invalid record as a probation violator may enhance his sentence in future crimes" was "insufficient to breathe life into the mooted controversy because the possible effect of an increased sentence depends on [appellant's] subsequent commission and conviction of a crime." *Kissinger*, 309 F.3d at 182. Kissinger noted that other circuits have also rejected this as a collateral consequence. *See id.* Nevertheless, even without this ground, we believe that a likely credit against a term of supervised release for improper imprisonment is sufficient to support the continuing validity of our decision in *Cottman*.[2]

The defendant in *Cottman* was effectively challenging his sentence of imprisonment, which he had completed. *Cottman* did not reach the issue of whether a court would have jurisdiction if Cottman had challenged only the sentence of supervised release that he was serving while his case was on appeal. We are required to confront this issue, and the obvious answer is that a court would have jurisdiction. Under such circumstances, jurisdictional issues on account of mootness do not arise.

■■■■ A defendant who was sentenced to and is serving a term of probation may appeal and challenge that probationary term, or its conditions, notwithstanding the fact that no term of imprisonment precedes the probationary term. Similarly, a defendant who was sentenced to and is serving a term of supervised release may elect to appeal only the supervised release term, or its conditions, without also appealing the term of imprisonment that precedes the supervised release term.[3] In either situation, the defendant is merely challenging the sentence that he is serving. As succinctly stated by the Fifth Circuit:

To the extent a defendant appeals his conviction, his appeal is not moot simply because his term of imprisonment has expired.... Neither is [a defendant's] challenge to his sentence moot because he remains subject to a term of supervised release, *an element of the overall sentence*. Generally, a term of supervised release is not immune to modification by the district court. A district court may have the authority to modify conditions of supervised release under 18 U.S.C. § 3583(e)(2), or the authority to terminate obligations of supervised

**2.** Case law in other circuits supports this position. *See, e.g., United States v. Lares–Meraz,* 452 F.3d 352, 355 (5th Cir.2006); *United States v. Maken,* 510 F.3d 654, 656 n. 3 (6th Cir.2007); *United States v. Eske,* 925 F.2d 205, 206 n. 2 (7th Cir.1991); *United States v. Allen,* 434 F.3d 1166, 1170 (9th Cir.2006); *United States v. Vera–Flores,* 496 F.3d 1177, 1180 (10th Cir.2007). We are aware, however, of cases to the contrary in other circuits. *See, e.g., United States v. Blackburn,* 461 F.3d 259, 262 (2d Cir.2006) (holding that the possibility of a reduced term of supervised release

on remand must be more than "remote and speculative"); *see also United States v. Williams,* 475 F.3d 468, 478–79 (2d Cir.2007) (holding that credit for a reduced imprisonment term was not possible against a mandatory minimum supervised release term).

**3.** Such an appeal would, of course, have to be taken within the time limits set forth in the Rules of Appellate Procedure for filing an appeal. *See* Fed. R.App. P. 4.

release, after the expiration of one year of supervised release, under [18 U.S.C.] § 3583(e)(1).

*United States v. Lares–Meraz*, 452 F.3d 352, 355 (5th Cir.2006) (internal citations omitted) (emphasis added). *See also United States v. Prochner*, 417 F.3d 54, 59 n. 4 (1st Cir.2005) (holding that defendant's appeal of his sentence was not moot despite his release from prison, as he was serving a term of supervised release); *United States v. Gonzalez*, 250 F.3d 923, 928 (5th Cir.2001) ("To the contrary, supervised release, while a form of post-imprisonment supervision, is still considered to be a component of the defendant's total sentence."); *United States v. Maken*, 510 F.3d 654, 656 n. 3 (6th Cir.2007) ("Even when an appellant has been released from custody, his case is not moot so long as the appeal 'potentially implicates' the length of the appellant's supervised release term."); *United States v. Cooper*, 498 F.3d 1156, 1159–60 (10th Cir.2007) ("Similarly, Mr. Cooper's challenge to the condition of supervised release is also clearly part of his 'sentence.' ").

Under post-*Booker* jurisprudence, we review not only a term of imprisonment, but also a term of supervised release for reasonableness. *See, e.g., Maken*, 510 F.3d at 656 n. 3 (discussing the broad discretion district courts have after *Booker* to modify terms of supervised release). Thus, because a live case or controversy that a court can remedy arises when a defendant challenges the sentence he is currently serving, issues of mootness do not arise. *See, e.g., United States v. Molak*, 276 F.3d 45, 48 (1st Cir.2002) ("[A] convicted defendant who is under an ongoing sentence of supervised release has a continuing stake in the outcome of a challenge to the underlying conviction and sentence.").

To summarize *Spencer*'s impact, jurisdictional issues on account of mootness do not arise when a defendant who is imprisoned during the pendency of his appeal challenges his conviction or his sentence. A defendant enjoys a presumption of collateral consequences when he challenges his criminal conviction or both his criminal conviction and his sentence while he is serving a term of parole, probation, or supervised release. Accordingly, even though his imprisonment is completed, the defendant need not show that collateral consequences exist because of this presumption. The presumption of collateral consequences does not extend to challenges to the revocation of parole, probation, or supervised release, however.

Jurisdictional issues on account of mootness, like those addressed in *Spencer*, also do not arise when a defendant who is serving a term of probation challenges his sentence of probation. Similarly, if a defendant who is serving a term of supervised release elects to challenge only his sentence of supervised release, he has raised a live case or controversy under Article III such that a court will have jurisdiction over his appeal. A defendant who is serving a term of supervised release and challenges only his completed sentence of imprisonment must show collateral consequences. We have held, in *Cottman*, that the possibility of a credit for improper imprisonment against a term of supervised release is sufficient to give us jurisdiction. A defendant who is no longer serving a term of imprisonment, parole, probation, or supervised release and challenges only his sentence will have his appeal dismissed for lack of jurisdiction unless he can somehow show sufficient collateral consequences to overcome the holding in *Kissinger*.

As noted, Jackson has completed her term of imprisonment and is currently

serving a term of supervised release. In her opening brief, Jackson initially challenged only the length and reasonableness of her sentence, claiming that she should have been sentenced to only a term of probation. In her supplemental letter brief, Jackson now argues that "the only issue left for this Court to decide is whether a three year period of supervised release is reasonable."[4] *See* Appellant's Supp. Letter Br. at 1. She does *not* challenge her underlying conviction. Since Jackson is currently serving a term of supervised release, and because her challenge is to whether that term of supervised release is reasonable, the issues of mootness and jurisdiction addressed in *Spencer* and its progeny do not arise. Accordingly, we need not discuss whether collateral consequences are present, as a sufficient case or controversy exists to give this Court jurisdiction over Jackson's appeal.

### B.

■ Having determined that Jackson's appeal is not moot, we must next determine whether the waiver of the right to appeal contained in Jackson's plea agreement prohibits her from contesting the reasonableness of her sentence. In *United States v. Khattak*, we held that waivers of appellate rights, if entered into knowingly and voluntarily, are valid. *See*

*United States v. Khattak*, 273 F.3d 557, 562 (3d Cir.2001). A defendant's valid appellate waiver does not deprive this Court of jurisdiction over the defendant's claims, and we retain subject matter jurisdiction over the defendant's appeal despite the waiver. *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir.2007). As we noted in *Gwinnett*, we will decline to exercise our jurisdiction to review the merits of an appeal where the defendant knowingly and voluntarily waived the right to appeal. *See id.* Of course, we will review the merits of an appeal if the waiver expressly provides specific exceptions under which an appeal may be taken, provided the appeal implicates one of those exceptions.[5]

Furthermore, we have recognized that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver," and in such cases we will exercise our jurisdiction over a waived appeal. *Khattak*, 273 F.3d at 562; *see also Gwinnett*, 483 F.3d at 203 ("Nonetheless, we will not exercise [our] jurisdiction to review the merits of [an] appeal if we conclude that [the defendant] knowingly and voluntarily waived her right to appeal unless the result would work a miscarriage of justice."). While this Court has not articulated a precise definition of the phrase "miscarriage of

---

4. In her supplemental letter brief, Jackson concedes that her prison time "cannot be restored to her," and states that she is "not asking this Court to credit any excess time she may have served in custody against her period of supervised release." *See* Appellant's Supp. Letter Br. at 1. Jackson suggests merely that the supervised release imposes restrictions on her liberty that amount to "collateral consequences." *See id.* at 2. Because the factual circumstances of her appeal have changed since Jackson filed her opening brief and we requested supplemental briefing, we will allow Jackson to modify the specific arguments supporting her challenge to her sentence.

5. Waivers frequently contain provisions allowing a defendant to appeal if the Government appeals; if the sentence exceeds a statutory maximum; if there is an erroneous upward departure, an unreasonable upward variance, or the sentence unreasonably exceeds the advisory Guidelines range; or in other specified circumstances. As previously noted, in this case Jackson was permitted to appeal if the Government appealed first, if her sentence exceeded the statutory maximum, or if her sentence unreasonably exceeded the advisory Guidelines range. *See* App. at 19.

justice," we have set forth several factors to consider when determining whether to enforce an otherwise proper appellate waiver. *See Khattak,* 273 F.3d at 563 (noting that this Court chose "not to earmark specific situations" in which to relieve the defendant of a waiver). These factors include "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *See id.* (quoting *United States v. Teeter,* 257 F.3d 14, 25–26 (1st Cir.2001)).

A few years after our decision in *Khattak,* the Supreme Court held that the Sentencing Guidelines were advisory in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *United States v. Cooper,* we adopted a deferential standard of review for sentencing appeals, noting that sentencing judges' remarks "are unlikely to be a perfect or complete statement of all the surrounding law." *See United States v. Cooper,* 437 F.3d 324, 330 n. 8 (3d Cir.2006); *see also id.* at 329 (noting that although "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors ... [t]he court need not discuss every argument made by a litigant...."). We held in *United States v. Lockett* that "where a criminal defendant has voluntarily and knowingly entered into a plea agreement in which he or she waives the right to appeal, the defendant is not entitled to resentencing in light of [the intervening decision] in *Booker.*" *See United States v. Lockett,* 406 F.3d 207, 214 (3d Cir.2005). Following our decisions in

*Khattak, Lockett,* and *Gwinnett,* the United States Supreme Court handed down its decision in *Gall v. United States,* in which it noted that sentencing decisions by District Courts are to be reviewed under a deferential abuse-of-discretion standard.[6] *See Gall v. United States,* 552 U.S. ——, 128 S.Ct. 586, 597–98, 169 L.Ed.2d 445 (2007). *Cooper* continues to be the law in this Circuit, but we will read it in light of *Gall.*

■ The initial question before us is whether Jackson's waiver of the right to appeal her sentence was knowing and voluntary. Prior to accepting Jackson's plea, the District Court held a hearing to discuss the provisions of the plea agreement with Jackson, as was required by Rule 11 of the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 11(b). During this hearing, the District Court verified that Jackson had in fact signed the plea agreement, that she had read and understood the provisions of the agreement, that she had conferred with her attorney about the agreement, and that she was in fact agreeing to plead guilty freely and voluntarily. The Court reviewed in detail the rights that Jackson was relinquishing because she was pleading guilty and confirmed that she understood these rights. The Court also reviewed the provisions of the plea agreement with Jackson and her attorney, including the waiver of the right to appeal. *See* App. at 46–49. The District Court's colloquy was thorough and proper. The record thus reveals that Jackson's plea was knowing and voluntary. She was, by her own admission, aware of the appellate waiver.

---

**6.** *See also Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 2469, 168 L.Ed.2d 203 (2007) ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.").

Having determined Jackson's waiver of the right to appeal to be valid, we next have to determine whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver. It is apparent that none of the three exceptions to the waiver is implicated by Jackson's sentence. The Government did not file an appeal prior to Jackson's appeal. The sentence of six months does not exceed either the five-year maximum sentence prescribed by statute or the advisory Guidelines range of 0–6 months. Thus, Jackson's appeal is not permitted by any of the specific exceptions in the plea agreement.

Because Jackson's waiver of appeal was knowing and voluntary, and because none of the specific exceptions permits an appeal to be taken, we must next determine whether enforcing the waiver would work a miscarriage of justice. *See Khattak*, 273 F.3d at 562; *Gwinnett*, 483 F.3d at 203. Jackson's appeal claims only that her sentence of imprisonment and supervised release was unreasonable. Her sentence of imprisonment and supervised release falls within the advisory Guidelines range, albeit at the upper end, and the record reveals that the District Court did not err in calculating the Guidelines range and imposing the sentence. Thus, Jackson's claim that her sentence was unreasonable is the sole basis upon which we could find that enforcing the waiver would work a miscarriage of justice.

*Khattak* contemplated that "unusual circumstances" could amount to a miscarriage of justice, and there may well be unusual situations in which an unreasonable sentence, standing alone, could require invalidating the waiver to avoid a miscarriage of justice. Nevertheless, in light of *Gall's* deferential abuse-of-discretion standard for reviewing sentencing appeals, it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice. This case obviously does not present the "unusual circumstances" we contemplated in *Khattak*. Accordingly, we decline to exercise our jurisdiction over Jackson's appeal, as she has waived the ability to challenge her sentence of imprisonment and supervised release. *See, e.g., United States v. Sines*, 303 F.3d 793, 798–99 (7th Cir.2002) (holding that waiver of right to appeal included waiver of challenges to supervised release conditions); *United States v. Andis*, 333 F.3d 886, 892 n. 7 (8th Cir.2003) (same); *United States v. Cope*, 506 F.3d 908, 914 (9th Cir.2007) (holding that the "length of [defendant's] term of supervised release is part of his 'sentence,'" and that the defendant could not challenge the length of his supervised release because he waived the right to appeal his sentence); *Cooper*, 498 F.3d at 1159–60 (holding that the appellant's challenge to a condition of his supervised release was a challenge to his "sentence" and therefore prohibited by his waiver of the right to appeal his sentence). *See also United States v. Lee*, 502 F.3d 447, 452 (6th Cir. 2007) (Batchelder, J., dissenting) (arguing that "sentence" includes supervised release for purposes of waiver of appellate rights).

## IV. CONCLUSION

We have considered all other arguments made by the parties on appeal, and we conclude that no further discussion is necessary. For the foregoing reasons, Jackson's appeal of her sentence is not moot. Based on Jackson's waiver of her right to appeal, we will dismiss this appeal and thereby affirm the District Court's judgment in all respects.