

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-10-2009

# USA v. Austin

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2258

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Austin" (2009). *2009 Decisions.* Paper 1892.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1892

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2258

_____

UNITED STATES OF AMERICA

v.

CHYQUIN AUSTIN
a/k/a Q.B.
a/k/a LITTLE HOMIE

          Chyquin Austin,
             Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 03-cr-00844-22)
District Judge: Honorable Katharine S. Hayden

_____

Submitted Under Third Circuit LAR 34.1(a)
January 27, 2009

Before: SCIRICA, Chief Judge, AMBRO, and SMITH, Circuit Judges

(Opinion filed : February 10, 2009)

_____

OPINION

_____

AMBRO, Circuit Judge

       Chyquin Austin pled guilty to two racketeering counts based on his involvement in

a violent gang-related crime. Since 2002, Austin had been a member of an Essex County, New Jersey street gang known as the Double II Bloods, which is a sect of the Bloods, a nationwide gang. During a stint at the Essex County Jail in August 2003, he brutally slashed the face of a fellow gang member.[1]

Austin appeals his sentence of 55 months' imprisonment and three-years' supervised release.[2] The Government contends the sole issue Austin presents on appeal is whether his three-year term of supervised release was reasonable. Austin's argument is not that straightforward, however. His appeal pertains to the 30 months he spent incarcerated in the Passaic County, New Jersey Jail (the "PCJ") between his arrest and sentencing.[3] For purposes of appealing his sentence, Austin requests relief from his

---

[1]This type of violent attack is not uncommon within the Bloods. The formal gang structure allows senior leadership to control the criminal activity that members of the gang carry out. If another gang member is suspected of "snitching," or cooperating with law enforcement, gang members incarcerated in the same facility as the "snitch" may be ordered to retaliate against that target. The retaliation may include killing or slashing the face of the target. Here, Austin and other Double II Bloods incarcerated in the Essex County Jail were ordered by more senior gang members to attack one of their own who was believed to be a "snitch." They beat the person to unconsciousness and Austin repeatedly slashed his face. The resulting scars indicate to gang members, among others, that he is a "snitch." Austin admitted to these facts during his guilty plea colloquy.

[2]He was sentenced to concurrent terms of 55 months' imprisonment and three-years' supervised release on the racketeering count in violation of 18 U.S.C. § 1959(a)(3) and 2, and 36 months' imprisonment and one-year supervised release on the conspiracy racketeering count in violation of § 1959(a)(6).

[3]The 30 months spanned the time from Austin's arrest in late October 2004 to his sentencing date on April 18, 2007. He was indicted by a federal grand jury on February 10, 2005 as part of a 66-count Second Superseding Indictment. The Indictment charged numerous Double II Bloods' gang members with a wide range of violent and drug-related

supervised release term because he is set to be released from prison in May 2009. He further contends that "[t]he District Court unreasonably did not consider the conditions at [the PCJ] at all in setting the term of supervised release at three years." Although this argument specifies only his supervised release, the substance of his appellate brief also discusses the unreasonableness of his term of imprisonment in light of the "squalid conditions" at the PCJ.

This appears to conflate two arguments. *See United States v. Jackson*, 523 F.3d 234, 24–41 (3d Cir. 2008) (explaining that in appealing a sentence, a defendant can challenge only his supervised release, only his imprisonment, or both). We view Austin's challenge to his sentence in two parts, both related to the conditions at the PCJ: (1) whether his term of imprisonment was unreasonable; and (2) whether his term of supervised release was unreasonable. We hold that both were reasonable, and thus affirm the District Court.[4]

## I.

At the sentencing hearing, the District Court heard arguments from both parties concerning Austin's request for a downward departure based on the 30 months he spent in

---

racketeering crimes. Many of these defendants spent significant time at the PCJ awaiting sentencing. Austin was one of the first defendants to plead guilty in December 2005. In 2006, while in the PCJ awaiting sentencing, Austin filed two motions for speedy sentencing and dismissal, which were dismissed by the District Court.

[4]It had subject matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

the PCJ and its notoriously poor conditions of confinement. Austin's argument to the Court was somewhat confusing, but we interpret it in the same manner it appears the District Court did—as an argument for a formal downward departure from the federal Sentencing Guidelines' range under U.S. Sentencing Guidelines Manual (hereinafter "U.S.S.G.") § 5K2.0 ("Grounds for Departure (Policy Statement)"), and alternatively as an argument for a downward variance on the same ground based on the advisory nature of the Guidelines post-*Booker*.

Austin's counsel did not provide specific details regarding Austin's term of confinement and the conditions he endured at the PCJ. Instead, counsel referred to a newspaper article and letters sent by Austin to the Court concerning the conditions at the PCJ. He also relayed Austin's eagerness to serve his sentence in a Bureau of Prisons' facility so that he would have the opportunity to take advantage of the educational opportunities it offers and to earn good-time credits. Counsel highlighted that Austin obtained a GED while incarcerated despite the limited opportunities at the PCJ.

The Government argued that Austin's reasons were not sufficient to warrant a downward departure or variance. Although its position was that the Court should not consider the PCJ confinement in sentencing Austin, it acknowledged that the conditions at the PCJ were bad, and if the Court chose to take this into consideration it should only

do so in determining a proper sentence within the Guidelines' range of 51 to 63 months.[5]

The Court acknowledged that it was aware of the tough conditions for inmates at the PCJ, yet it declined to depart downward on this basis. It agreed to "consider [Austin's time at the PCJ] as part of the history and characteristics of the defendant's portion of the sentencing statute" under 18 U.S.C. § 3353(a). In considering the § 3353(a) factors, the Court lauded Austin's GED achievement, "even in deplorable conditions in [the PCJ]," and noted his intentions for his future and the family members who cared about him. This was outweighed, however, by, among other things, the "savage nature" of the offense. It determined that a within-Guidelines' sentence was appropriate, but the top of the Guidelines' range was "heavier than is necessary considering [Austin's] history and characteristics." The Court concluded that the appropriate sentence of imprisonment was in the mid-range of the Guidelines, 55 months, which meant Austin would serve approximately two years in prison after crediting his time in the PCJ.

The Court then considered the appropriate term of supervised release. The statutory maximum was three years. *See* 18 U.S.C. § 3583(b)(2), (e)(1). The Guidelines state that a district court "shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed," and recommends between two and three years of supervised release. U.S.S.G. §§ 5D1.1(a), 5D1.2(a)(2).

---

[5]The Guidelines' range was based on Austin's criminal history category of III and total offense level of 22. Austin does not dispute this calculation.

The Court discussed Austin's possible opportunities post-prison. Its most serious concern was the risk of Austin getting pulled back into gang life after his release from prison. It noted that he was an attractive gang prospect because of his height, intelligence, and good looks. It hoped that Austin would further progress during his remaining incarceration period so that he could "get some skills and get . . . independent of needing the gang life to earn money and to feel good about [him]self." To help prevent a return to the gang and encourage a law-abiding life, the Court imposed the maximum period of supervised release, three years, and added specific conditions. These conditions included drug testing and drug treatment, a prohibition on frequenting known "Blood" locations, wearing or possessing gang clothing and paraphernalia, and associating with any gang members. Austin's counsel did not object to the Court's imposed term of supervised release.

## II.

"Under post-*Booker* jurisprudence, we review not only a term of imprisonment, but also a term of supervised release[,] for reasonableness." *Jackson*, 523 F.3d at 241 (discussing that imprisonment and supervised release are parts of a defendant's total sentence). The Guidelines are now advisory, and our reasonableness review of the District Court's sentence is a "deferential abuse of discretion standard." *United States v. Gunter*, 527 F.3d 282, 284 (3d Cir. 2008) (citing *Gall v. United States*, 128 S.Ct. 586, 597–98 (2007)). For a sentence to be procedurally reasonable, sentencing judges must

6

follow a three-step sentencing process: (1) calculate the defendant's Guidelines' sentence; (2) rule on motions of both parties and "state on the record whether they are granting a departure and how that departure affects the Guidelines calculation"; and (3) "exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines." *Id.* (internal quotations omitted) (alteration in original) (quoting *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)).

"Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S.Ct. at 597. It is "less likely that a within-[G]uidelines' sentence, as opposed to an outside-[G]uidelines' sentence, will be unreasonable." *United States v. Cooper*, 437 F.3d 324, 331 (3d Cir. 2006). "As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008) (citation omitted).

## III.

Before assessing the merits of Austin's claims relating to the reasonableness of his term of incarceration, we address a potential jurisdiction issue. Austin's counsel states that "it is too late for [Austin] to benefit from a reduction in his term of incarceration. Instead, [he] seeks relief as to the supervised release component of his sentence." As

7

noted, Austin is scheduled to be released in May 2009. In challenging his sentence, Austin was not certain whether he would still be imprisoned during the pendency of his appeal. We note that if his term of imprisonment was complete, we would have to consider whether his appeal is moot or the doctrine of "collateral consequences" applies to give us jurisdiction.[6] Since Austin is still incarcerated at this point, his present circumstance raises no question whether we have jurisdiction to consider a challenge to his term of imprisonment.

At sentencing, Austin briefly argued for a downward departure on the basis of the Guidelines' section setting out the general grounds for departures. U.S.S.G. § 5K2.0(a)

---

[6]A defendant who is serving a term of supervised release and challenges his completed sentence of imprisonment must show collateral consequences to present a live case or controversy under Article III of the Constitution. *Jackson*, 523 F.3d at 241. In *Jackson*, we held that collateral consequences include "the possibility of a credit for improper imprisonment against a term of supervised release." *Id.* (citing *United States v. Cottman*, 142 F.3d 160, 165 (3d Cir. 1998)); *see also United States v. Prochner*, 417 F.3d 54, 59 n.4 (1st Cir. 2005) (holding that although the defendant was released from prison, his appeal was not moot because he is serving a term of supervised release as part of his sentence). *Jackson* recognized that other circuits are split on this issue, but found support for its holding in *United States v. Johnson,* 529 U.S. 53, 60 (2000):

> The trial court, as it sees fit, may modify an individual's conditions of supervised release. [18 U.S.C.] § 3583(e)(2). Furthermore, the court may terminate an individual's release obligations "at any time after the expiration of one year . . . if it is satisfied that such action is warranted by the conduct of the defendant released in the interest of justice." [18 U.S.C.] § 3583(e)(1).

523 F.3d at 239 (alterations in original) (quoting *Johnson*, 529 U.S. at 60). Thus, if a defendant is serving a sentence of supervised release during the pendency of his appeal, a challenge to an unreasonably long sentence (or term of imprisonment) would not be moot.

(referencing 18 U.S.C. § 3553(b)). The District Court declined to exercise its discretion to depart downward.[7] We therefore lack jurisdiction to review that discretionary decision. *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004).

Austin also argues, albeit indirectly, that the District Court's decision not to vary from the Guidelines in consideration of the § 3553(a) factors was unreasonable. He supports his argument by comparing his circumstances at the PCJ to those in *United States v. Sutton*, No. 07-426, 2007 WL 3170128 (D.N.J. Oct. 25, 2007). In *Sutton*, the same District Court held an extensive hearing and granted the defendant a variance below the Guidelines' range based on the conditions at the PCJ.[8] *Id.* at *9 (stating "the logical

---

[7]We take note that several district courts (although only in non-published opinions) have determined that extraordinary conditions of confinement potentially warrant a downward departure, even though pretrial confinement is not a factor listed in the Sentencing Guidelines. *See, e.g.*, *Pelaez v. United States*, No. 08-0600, 2008 WL 4004573, at *4 (D.N.J. Aug. 25, 2008) (not for publication); *Isaza v. United States*, No. 06-2687, 2007 WL 2226015, at *3 (D.N.J. Aug. 1, 2007) (not for publication). The Supreme Court recognized in *Koon v. United States* that factors not mentioned in the Guidelines can serve as a basis for a downward departure, but these departures will be "highly infrequent." 518 U.S. 81, 93–96 (1996). A departure based on the unusual and deplorable conditions of the defendant's pretrial detainment is "highly infrequent." *Pelaez*, 2008 WL 4004573, at *4; *see also United States v. Sutton*, 973 F. Supp. 488, 493 (D.N.J. 1997) ("Unusual pretrial confinement, . . . in either length or severity of condition, can properly be considered by the sentencing court."). *Pelaez* cited several district court decisions from our Circuit to demonstrate the infrequency of the departure, including the highly unusual circumstances endured by those defendants who have received a departure (*e.g.*, being subject to physical or sexual abuse while in prison), and the circumstances in which defendants were not granted a departure (*e.g.*, a defendant spent one year in a deplorable Columbian prison, which was overcrowded, had no running water, and an infestation of rodents). *Pelaez*, 2008 WL 4004573, at *4.

[8]The District Court reached a similar conclusion in two subsequent cases. *See United States v. Ortiz*, Nos. 06-858 & 07-256, 2007 WL 4208802 (D.N.J. Nov. 27, 2007)

way of acknowledging [the defendant] was punished 'more than was necessary' under conditions that violate one of the goals of a reasonable sentence[] is to reduce the extent of the overall sentence he must serve"). The Court attributed its variance decision to § 3553(a) factors (2)(A) and (D). *Id.* at *8–9; *see also* 18 U.S.C. § 3553(a)(2)(A), (D) (addressing "the need for the sentence imposed . . . (A) . . . to promote respect for the law . . . [and] (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment").

Here, the Court discussed Austin's argument about conditions at the PCJ, acknowledging the severity of the problem at that facility. It determined, however, that Austin's violent gang-related offense was too serious to warrant a variance from the Guidelines' range. Instead, it took the PCJ conditions and other factors into account in concluding that a top of the Guidelines' range sentence would be more punishment than necessary, but a mid-range Guidelines' sentence was appropriate for Austin based on the § 3553(a) sentencing factors. It made an "individualized assessment based on the facts

---

(supplemental opinion) (supplementing its sentencing decisions that granted downward variances for two defendants in unrelated cases, Ortiz and Garcia-Pagador, of 8 and 12 months, respectively, to match the time each defendant spent at the PCJ and relying on the § 3553(a) factors after extensive sentencing hearings concerning the PCJ conditions). The Court stated that "[i]n the future, this Court will entertain an application by a defendant facing sentencing who was a pre-trial detainee at the [PCJ], to incorporate the prior testimony about jail conditions into the record at his or her sentencing." *Id.* at *6. The Court noted that a "formulaic approach" to this issue is not appropriate and "[t]his does not mean that conditions in [the PCJ] are the only considerations to be weighed by a sentencing judge." *Id.*

presented." *Gall*, 128 S.Ct. at 597. In this context, Austin's sentence of 55 months' imprisonment was reasonable and the Court did not abuse its discretion in setting this within-Guidelines' sentence.

**IV.**

Austin's second challenge is to his three-year term of supervised release. He argues that the District Court erred because it "gave no weight to the conditions of confinement in assessing how long [he] would serve on supervised relief." At sentencing, Austin argued for a reduced term of imprisonment based on his incarceration at the PCJ, but did not object to the term of supervised release on similar, or any, grounds. Therefore, our reasonableness review of the Court's term of supervised release is for plain error. A defendant must satisfy a four-prong test to be successful under plain error review: there is (1) an error; (2) that is plain; (3) which affects substantial rights; and (4) seriously impairs the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

Although it appears Austin is correct that at the sentencing hearing the Court did not give any weight to this factor in determining his term of supervised release, it did not err, much less plainly err, in failing to do so. "Sentencing courts, in determining the conditions of a defendant's supervised release, are required to consider" the applicable § 3553(a) factors. *United States v. Johnson*, 529 U.S. 53, 59–60 (2000); *see also* 18 U.S.C. § 3583(c). "[I]mprisonment and supervised release are designed to serve very

11

different purposes." *United States v. Joseph*, 109 F.3d 34, 38 (1st Cir. 1997) (citations omitted). The term and conditions of supervised release "illustrate that [], unlike incarceration, [it] provides individuals with postconfinement assistance." *Johnson*, 529 U.S. at 60 (citation omitted). "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* at 59 (citations omitted). Unlike the length of a term of imprisonment, the length of a term of supervised release is not based on a defendant's offense level or advisory Guidelines' range, but rather on the grade of the defendant's crime (*e.g.*, the class of felony). *See* 18 U.S.C. § 3583(b).

At sentencing, the Court went into detail about its purpose for giving Austin the statutory maximum of three years' supervised release and why it added specific conditions to his term. It was concerned about supporting his transition back into the community as a law-abiding citizen and preventing a relapse to gang life. In this context, Austin's conditions of confinement at the PCJ did not relate to the underlying purpose of supervised release, and thus did not need to be addressed by the Court. Moreover, when it discussed supervised release at the sentencing hearing, Austin did not raise this argument. The Court is not required to address an argument *sua sponte*, or one, such as this, that is clearly not persuasive. *See Cooper*, 437 F.3d at 329. We thus conclude that the Court gave "meaningful consideration" to the applicable § 3553(a) factors. *See Gunter*, 527 F.3d at 284 (quoting *Cooper*, 437 F.3d at 329).

## CONCLUSION

For these reasons, we conclude that Austin's sentence was reasonable. We thus affirm the District Court's sentence.