

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-2-2009

# USA v. Floyd

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1173

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Floyd" (2009). *2009 Decisions*. Paper 1595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1173

UNITED STATES OF AMERICA

v.

CHRISTOPHER FLOYD,
                    Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 07-cr-00262)
District Judges: Honorable Donetta W. Ambrose

Submitted Under Third Circuit LAR 34.1(a)
March 24, 2009

Before: RENDELL, AMBRO, and JORDAN, <u>Circuit Judges</u>

(Opinion filed: April 2, 2009)

OPINION

AMBRO, <u>Circuit Judge</u>

Christopher Floyd pled guilty to one count of filing a false tax return in violation of 26

U.S.C. § 7206(1).  The District Court sentenced him to 24 months' imprisonment.  Floyd now

claims that the Court abused its discretion by not reducing his sentence on the basis of an alleged

mitigating factor.  Because we conclude that Floyd knowingly and voluntarily waived his right

to appeal his sentence, we affirm the judgment of the District Court.

I.

As we write primarily for the parties, our discussion of the factual and procedural history is brief. By 1997, Floyd's mother owed more than $50,000 to the Internal Revenue Service for back taxes. During the course of her discussions with the IRS over payment of this sum, she died from a prescription drug overdose. Blaming the IRS in part for his mother's death, Floyd stopped paying taxes. From 1997 to 2000 he filed no federal tax returns, and from 2000 to 2004 he filed false federal tax returns. In total, Floyd withheld $429,923 from the federal fisc.

In July 2007, the United States Attorney for the Western District of Pennsylvania charged Floyd with five counts of filing a false tax return in violation of 26 U.S.C. § 7206(1) and 24 counts of assisting the filing of a false tax return in violation of 26 U.S.C. § 7206(2). Floyd waived indictment and pled guilty to one count of filing a false tax return and acknowledged responsibility for the remaining 28 counts. In a written plea agreement, Floyd also accepted sentencing by the District Court and agreed to an appellate waiver.

The District Court, using the applicable United States Sentencing Guidelines ("U.S.S.G."), found that Floyd's base offense level was 20, but reduced it three levels pursuant to U.S.S.G. §§ 3E1.1(a)–(b) because he accepted responsibility for his conduct and timely notified authorities of his intention to plead guilty. In conjunction with a Criminal History Category of I, this reduced offense level correlated with an advisory Guidelines range of 24 to 30 months. As noted, the Court sentenced Floyd to 24 months' imprisonment. (It also sentenced him to one year of supervised release.) This appeal followed.

II.

We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. "Nonetheless, we

2

will not exercise that jurisdiction to review the merits of [a defendant's] appeal if we conclude that [he] knowingly and voluntarily waived h[is] right to appeal unless the result would work a miscarriage of justice." *United States v. Gwinett*, 483 F.3d 200, 203 (3d Cir. 2007).

A.

Although Floyd does not address the validity of his appellate waiver in his brief, we still must consider whether there is record evidence that he "knowingly and voluntarily signed the waiver." *Id.*; *see also United States v. Goodson*, 544 F.3d 529, 534–39 (3d Cir. 2008). The relevant language of the plea agreement that Floyd signed reads:

> Christopher Floyd waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
> (a)    If the United States appeals from the sentence, Christopher Floyd may take a direct appeal from the sentence.
> (b)    If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Christopher Floyd may take a direct appeal from the sentence.

Supp. App. at 3–4. This language is comprehensive and sufficiently informed Floyd when he could, and could not, appeal.

Floyd's plea colloquy confirms that he fully understood the nature and consequences of the appellate waiver to which he agreed. The District Court asked Floyd whether he had read the plea agreement, discussed it with his attorney, understood it, and accepted it free from threats or undocumented promises. *See id.* at 19–26. Floyd answered yes to each question. The Court also questioned if Floyd had talked with his attorney about how the Sentencing Guidelines might apply to him, *see id.* at 23, and if he agreed to the Government's description of the plea agreement, which mentioned the appellate waiver. *See id.* at 20, 22. Floyd again answered yes. Even more specifically, the Court and Floyd shared the following exchange:

3

Q:     Now, under the plea agreement, you have given up substantial rights to appeal, but you should understand that there are certain circumstances under which you or the Government may have the right to appeal any sentence that I impose. Do you understand that?
A:     Yes, Your Honor.
Q:     And do you understand that you have given up certain appellate rights?
A:     Yes, Your Honor.

*Id.* at 24. Taken together, this evidence satisfies us that Floyd knowingly and voluntarily waived his right to appeal his sentence.

B.

To determine whether a "miscarriage of justice" would result if we declined to exercise jurisdiction over the merits of an appeal, we consider the clarity of the alleged error, its gravity, its nature, and the effect of that error on the parties. *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001). We also take into account that "it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice." *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir. 2008); *see also United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007).

Floyd alleges that the District Court erred by failing to consider his mother's death as a mitigating circumstance that warranted a downward departure under the Sentencing Guidelines. *See* Floyd's Br. at 1. In particular, he argues that the Court did not recognize the "unique psychological aspects" of his case (as reported in a psychological evaluation he obtained) when it opted not to sentence him below the recommended Guidelines range. *See id.* at 9; *see also* App. 10–23. This assertion of error does not constitute an unusual circumstance sufficient to give rise to a miscarriage of justice. *See United States v. Price*, __ F.3d __, No. 06-4503, 2009 WL 514095, at *11 (3d Cir. March 3, 2009) (determining that enforcement of an appellate waiver did not result in a miscarriage of justice where the Government refused to request an

4

applicable point reduction under U.S.S.G. § 3E1.1(b)); *Jackson*, 523 F.3d at 244 (holding that an alleged failure of the District Court to reduce a sentence did not work a miscarriage of justice sufficient to make an appellate waiver unenforceable).

III.

Floyd knowingly and voluntarily agreed to an appellate waiver that applies to his appeal and does not work a miscarriage of justice. Accordingly, we affirm the judgment of the District Court.