**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2379

———————

UNITED STATES OF AMERICA,

v.

JAMES E. HOCKER,
Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 4-18-cr-00313-001)
District Judge: Hon. Matthew W. Brann

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 22, 2021

Before: SMITH, *Chief Judge*, MATEY and FISHER, *Circuit Judges*.

(Opinion filed: July 9, 2021)

———————

OPINION*

———————

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

James Hocker appeals the sentence imposed for his securities fraud conviction. His court-appointed counsel moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), explaining that all grounds for appeal are frivolous and barred by the appellate waiver in Hocker's plea agreement. We agree, so we will grant the motion to withdraw and dismiss the appeal.

## I. BACKGROUND

For years, Hocker worked as a licensed insurance agent. Broadening his services, he began soliciting contributions to "investment vehicles." (App. at 76.) Except he did not hold any licenses in the securities industry. So he targeted the elderly, those nearing or entering retirement, and others with limited investment experience. Hocker showed potential investors dazzling stock quotes and dizzying returns of twenty-five or even thirty percent. It all came with a steep price, but Hocker promised the bang from his investments would be more than worth the bucks they would spend in fees, penalties, and taxes.

Of course, the adage about things too good to be true proved as sturdy as ever, as it was all a fraud. Hocker never invested his clients' money. And he never paid back the fees and taxes. He put all the money into his own accounts and used it for personal expenses. By the end, Hocker obtained money and property totaling about $1.5 million.[1]

In 2018, Hocker pleaded guilty to a one-count information charging securities fraud, in violation of 18 U.S.C. § 1348. As part of his plea, Hocker agreed to waive his right to

---

[1] To be precise, $1,495,782.62—the same amount Hocker would ultimately stipulate to in his plea agreement.

2

appeal his conviction and sentence if the District Court entered a sentence within or below the applicable Guidelines range. Hocker also agreed to make restitution to his victims of $1,495,782.62.

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR"). Using an offense level of 32 and a criminal history category of V, the Probation Office calculated Hocker's Guidelines sentencing range to be 188- to 235- months of imprisonment. Neither Hocker nor the Government objected to the PSR. Nor did Hocker challenge the restitution amount in the plea agreement.

At sentencing, the District Court adopted the factual findings of the PSR,[2] along with its Guidelines range of 188 to 235 months. After hearing from Hocker and witnesses from both sides, and considering Hocker's request for a downward variance, the District Court imposed a within-Guidelines sentence of 204 months of imprisonment, three years of supervised release, and ordered Hocker to pay restitution of $1,495,782.62. Hocker filed a notice of appeal, and his appointed counsel filed an *Anders* brief, stating that there were no nonfrivolous grounds for review, and an accompanying motion to withdraw.[3]

---

[2] Except for the restitution amount, which Hocker and the Government had stipulated to.

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 to review Hocker's appeal of his sentence. *United States v. Jackson*, 523 F.3d 234, 242 (3d Cir. 2008) (holding an appellate waiver "does not deprive this Court of jurisdiction over the defendant's claims"). We exercise plenary review in determining whether there are any nonfrivolous issues for appeal. *Simon v. Gov't of V.I.*, 679 F.3d 109, 114 (3d Cir. 2012).

## II. DISCUSSION

### A.    Hocker's Counsel's *Anders* Brief

In *Anders*, the Supreme Court explained that if there is nothing "in the record that might arguably support the appeal," an attorney may withdraw from further representation. 386 U.S. at 744. Third Circuit Local Appellate Rule 109.2(a) captures this guidance, and the need to balance the "competing interests of zealous advocacy for one's client, and the proscription against pressing frivolous arguments" on appeal. *United States v. Youla*, 241 F.3d 296, 299 (3d Cir. 2001). Pursuant to Rule 109.2(a), when counsel concludes that an "appeal presents no issue of even arguable merit," he or she may file a motion to withdraw and a brief explaining why pursuant to *Anders*. We then consider "(1) whether counsel adequately fulfilled the rule's requirements[,] and (2) whether an independent review of the record presents any nonfrivolous issues." *Youla*, 241 F.3d at 300 (citing *United States v. Marvin*, 211 F.3d 778, 780 (3d Cir. 2000)). If we determine that "the *Anders* brief initially appears adequate on its face," the second step of our inquiry is "guided . . . by the *Anders* brief itself," and we need not mine the record for other issues. *Id.* at 301 (quotation marks and citation omitted).

Hocker's counsel's *Anders* brief satisfies our requirements, and our independent review uncovers no meritorious issues. The brief presents a thorough examination of the record, and identifies four issues Hocker might raise on appeal: 1) whether the appellate waiver is valid and enforceable; 2) whether Hocker's guilty plea was knowing and voluntary; 3) whether Hocker's sentence is reasonable; and 4) whether Hocker's trial

counsel provided ineffective assistance.[4] Persuasively, the brief explains that Hocker cannot surmount the appellate waiver, and, in any event, his claims do not have merit.[5] Counsel's brief fulfills our requirements, and those of *Anders*, so we consider whether Hocker's appellate waiver bars this appeal.

## B.    The Appellate Waiver Is Valid And Enforceable

We enforce an appellate waiver if: 1) the defendant's arguments are covered by the waiver; 2) the waiver was entered into knowingly and voluntarily; and 3) its enforcement would not lead to a miscarriage of justice. *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008).[6] To determine the scope of Hocker's appellate waiver, we look to its text. *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008). And Hocker's appellate waiver is broad. It provides:

> [T]he defendant knowingly waives the right to appeal the conviction and sentence, on the express condition that the Court impose a sentence within or below the applicable advisory guidelines sentencing range as that sentencing range is determined by the Court. In the event the Court imposes a sentence greater than the applicable advisory guidelines sentencing range as that sentencing range is determined by the Court, the defendant retains the right to appeal the conviction and sentence.
>
> This conditional waiver includes any and all possible grounds for appeal, whether constitutional or non-constitutional, including, but not limited to, the

---

[4] These largely mirror the arguments Hocker raises in his pro se brief.

[5] Hocker's counsel does not opine on the merits of a potential ineffective assistance claim, but explains that, except in rare circumstances, we review arguments of ineffective assistance on collateral, rather than direct, review. *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003).

[6] Hocker argues that *Class v. United States*, 138 S. Ct. 798 (2018) allows his appeal. *Class* did not question the enforceability of appellate waivers; it only considered the petitioner's claim after finding that "the claims at issue . . . d[id] not fall within any of the categories of claims that Class' plea agreement forbid[] him to raise on direct appeal." *Id.* at 805. As we will explain, that is not the case here.

manner in which that sentence was determined in light of *United States v. Booker*, 543 U.S. 220 (2005). The defendant further acknowledges that this conditional appeal waiver is binding only upon the defendant and that the United States retains its right to appeal in this case.

(App. at 50–51.) As noted, the District Court imposed a sentence within the advisory Guidelines range. That means the waiver bars any challenge Hocker might bring to the calculation of the Guidelines range and the reasonableness of his sentence, *see, e.g.*, *Corso*, 549 F.3d at 928 (finding that a similar appellate waiver barred reasonableness and Guidelines-calculation challenges), or the restitution order the District Court imposed along with it, *United States v. Perez*, 514 F.3d 296, 299 (3d Cir. 2007) (explaining that "[b]y waiving his right to appeal his criminal sentence, [the defendant] waived his right to appeal the restitution order").

Next, Hocker knowingly and voluntarily agreed to the appellate waiver. The agreement memorializes his understanding, stating "I [Hocker] have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." (App. at 54.) An understanding confirmed by Hocker's counsel, and also the District Court. Before accepting Hocker's plea, the District Court conducted an extensive colloquy to ensure that Hocker understood the plea agreement and the appellate waiver. Nothing in the record suggests that Hocker did not knowingly and voluntarily waive his right to appeal his sentence.[7]

---

[7] As Hocker's counsel diligently notes, the District Court appears not to have explicitly determined that Hocker understood the forfeiture obligations discussed in the information, as required by Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure. We agree, though, that while "[t]he better practice unquestionably is to comply literally

6

Finally, we consider whether enforcing the appellate waiver would result in a miscarriage of justice. In so doing, we look to several factors: the "clarity of the [alleged] error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).

Here, enforcing the waiver is appropriate. Hocker understood the benefits and burdens of his plea agreement. He expressed no disagreement with the calculations prepared by the Probation Office or the District Court, despite ample opportunity to do so. And he received a sentence well within the Guidelines range. Even were we to agree with Hocker—and we do not—that the District Court "erred procedurally when it [miscalculated

---

and completely with every requirement of Rule 11," this mistake was ultimately harmless. *United States v. de le Puente*, 755 F.2d 313, 315 (3d Cir. 1985).

When asked by the District Court, Hocker acknowledged receiving and discussing the information, which explained his forfeiture obligations, with his attorney. The plea agreement he and his attorney signed explained that $1,495,782.62 was the amount of loss resulting in his actions, and that he would have to make full restitution to his victims in accordance with a court order. At Hocker's change of plea hearing, the Government, at the direction of the District Court, explained that he would need to repay $1,495,782.62. And after pleading guilty, Hocker signed a stipulation consenting to forfeiture of that same amount. The Government moved for forfeiture, the District Court entered a preliminary order for it, and at sentencing, the District Court incorporated this order into Hocker's sentence, ordering forfeiture of $1,495,782.62 and confirming that this sum would be given to the victims (less any amounts already paid). Throughout the proceedings, Hocker was repeatedly apprised of his obligation to hand over $1,495,782.62. At no point did Hocker object. There is no reason to believe that Hocker would not have pleaded guilty, or surrendered his right to appeal, but for the District Court's failure to articulate this fact to him during its Rule 11 colloquy.

a Guidelines range]," that "arguably erroneous calculation would be 'precisely the kind of garden variety claim of error contemplated by [an] appellate waiver[.]'" *United States v. Erwin*, 765 F.3d 219, 227 (3d Cir. 2014) (quoting *United States v. Castro*, 704 F.3d 125, 141–42 (3d Cir. 2013) (second alteration in original)). Here, "enforcing [such a] waiver would [not] work a miscarriage of justice." *Id.* at 228. Rather, "allowing alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive." *Corso*, 549 F.3d at 931 (cleaned up).

In sum, we agree with Hocker's counsel that: 1) any claims Hocker might raise fall within the scope of the appellate waiver, 2) Hocker entered into the waiver knowingly and voluntarily, and 3) no miscarriage of justice would result from enforcing it.

### III. CONCLUSION

For these reasons, we will grant counsel's motion to withdraw and dismiss the appeal.