OPINION
BARRY, Circuit Judge.
Pursuant to a written plea agreement, appellant Daniel A. Cassese pled guilty to a one-count information charging bank fraud in violation of 18 U.S.C. §§ 1344 and 2. On July 2, 2007, just prior to sentencing, Cassese signed an amended plea agreement. That amendment updated the relevant offense conduct and stipulated that the applicable offense level was 21. As pertinent here, in the amendment, Cassese waived the right to appeal a sentence within the Guideline range resulting from the agreed-upon offense level. The District Court discussed the amendment and imposed a within-Guidelines sentence of 43 months’ imprisonment.
Despite the provision in the amendment in which Cassese acknowledged his knowing and voluntary waiver of appeal, he now appeals, contending that procedural errors were committed at sentencing, in particular the failure of the District Court to “meaningfully consider the relevant sentencing factors under [18 U.S.C. § ] 3553(a) and to make findings with respect to those factors that would allow for meaningful appellate review.” (Appellant’s Br. at 16.) Cassese does not challenge the sentence that was imposed. We will enforce the appellate waiver, and affirm the judgment of sentence.
I. Facts & Background
During the period between February 10, 2003 and July 3, 2003, Cassese applied to Wachovia Bank (“Wachovia”), seeking three home equity loans and one unsecured loan totaling approximately $1.2 million. As a result of a gambling addiction, Cassese had a poor credit history. In an effort to shield that history from Wachovia, he applied for the four loans using his father’s social security number. He also misrepresented his employment status and income, and provided fictitious tax returns.
All four lines of credit were approved by Wachovia. Two of the home equity loans were secured by real estate owned by Cassese; the third such loan was secured by the residence of Cassese’s parents, albeit without their knowledge. In November 2003, Cassese defaulted on all four loans, and Wachovia’s preliminary investigation revealed that the social security number on the four applications belonged *203 to Cassese’s father. Wachovia contacted the FBI and the ensuing investigation confirmed that Cassese had, in fact, misrepresented his income and used his father’s social security number on all of the loan documents.
Wachovia’s losses were offset by the sale of Cassese’s two properties, and thus amounted to $267,046.14.
A. The Plea Agreement
In a plea agreement dated March 10, 2006 and signed by him on April 10, 2006, Cassese admitted to violating 18 U.S.C. §§ 1344 and 2, and stipulated — for sentencing purposes — that he caused a loss of $267,046.17. Included in the agreement was a very limited appellate waiver, specifically that if the District Court accepted the stipulated loss calculation, “both parties [would] waive the right to file an appeal ... claiming that the sentencing court erred in doing so.” (Appendix at 7.)
On August 11, 2006, following a plea colloquy, the District Court accepted Cassese’s guilty plea as knowing and voluntary. Cassese admitted that his four loan applications “contained false and fraudulent information including ... the social security number of [his] father ... [fictitious] employment [records] ... and a fictitious tax return.... ” (Id. at 23.) The Government briefly touched upon the limited appellate waiver, stating, “there are some limited stipulations that pertain to an appeal that may be lodged or that may in the future be lodged by Mr. Cassese.” (Id. at 22.) That waiver is not relied on by the Government before us, and we will not discuss it further.
B. Amendment to the Plea Agreement
During the presentence investigation phase, Cassese reported that he had engaged in additional behavior that caused various banks and credit card companies to lose over $1.1 million. Over the fourteen month period from July 2004 to August 2005, he obtained a total of five loans from PNC Bank using his mother’s social security number. Those loans totaled more than $420,000. Again using his mother’s information, in May 2006 he obtained a $250,000 loan from J.P. Morgan Chase Bank. He also opened numerous credit card accounts using his parents’ social security numbers, and amassed substantial unpaid balances. As he recognized in his sentencing memorandum, the conduct described in his post-plea disclosures “far exceeded] — in both quantity and quantum — the conduct to which he pleaded guilty.” (Supplemental Appendix at 15.)
In an amendment to the plea agreement, labeled “Schedule B,” the Government and Cassese stipulated that the newly-reported conduct should be considered in calculating the applicable Guideline level. (See Appendix at 8.) More importantly here, the amendment also included a broad appellate waiver, which stated in pertinent part:
Cassese knows that he has and ... voluntarily waives, the right to file any appeal ... including but not limited to an appeal under 18 U.S.C. § 3742 ... which challenges the sentence imposed by the sentencing court if that sentence falls within ... the Guidelines range that results from the agreed total Guidelines offense level of 21.
(Id. at 9.) Immediately prior to sentencing on July 2, 2007, the District Court addressed the amendment, asking Cassese, who was under oath, whether he had signed it, and whether he was competent when he did so. Cassese responded affirmatively to both questions, and his counsel indicated that he was “satisfied that” the amendment was “a knowing and intelligent agreement entered into by a competent defendant with full understanding of the *204 consequences,” and that the amendment had been “negotiated at length very carefully between the parties.” (Id. at 33, 35) The Court did not mention the appellate waiver.
C. Sentencing
Cassese sought a downward departure pursuant to U.S.S.G. § 5K2.13, arguing that his compulsive gambling addiction caused him to commit the offense. Alternatively, he argued that, at a minimum, his addiction should be “eonsider[ed] ... as part of the history and characteristics of the defendant.” (Id. at 43); see 18 U.S.C. § 3553(a)(1). He further contended that his parents needed him to “continue to stay home with them and [ ] care for them, which [was] basically all he’[d] been doing for the last few years.” (Appendix at 49.)
The District Court was largely unpersuaded by Cassese’s arguments. The Court noted, for instance, the Government’s argument that Cassese was “actually a danger” to his parents, and that his responsibility for their care should not be a ground for a downward variance. The Court also declined to grant a downward departure under U.S.S.G. § 5K2.13.
The District Court did, however, state that it considered Cassese’s struggles with gambling in arriving at a sentence at the lower end of the Guidelines range of 41 to 51 months. (See id. at 71 (“[W]hile I will not depart downward, I will consider [Cassese’s problems] in placing him within the [G]uicleline[s] range”).) It explained that a below-Guidelines sentence was not appropriate because Cassese was “a dangerous, manipulative man who has engaged in repetitive conduct that has injured many people. The Court should be careful not to become an enabler here and allow him to do it again.” (Id. at 69; see id. at 71 (“We do have someone who has engaged in financially damaging and dangerous behavior on a repetitive basis ... [but has] also taken some measures to try to treat his problems”).) The Court continued: “We have an obligation to protect the public. The fact that [Cassese] may have gotten his parents to forgive him for the damage that he has done to them does not mean that the Court should take a blind eye.” (Id. at 69)
After imposing the 43-month sentence, the District Court returned to its discussion of the factors set forth in § 3553(a). It noted that the circumstances of the offense “are, indeed, egregious,” and that defendant’s history “d[id] not inspire confidence.” (Id. at 74.) The Court also stated that a lesser sentence would neither deter the defendant nor adequately protect the public.
II. Discussion
“Where, as here, the government invokes an appellate-waiver provision contained in a defendant’s plea agreement, we must determine as a threshold matter whether the appellate waiver prevents us from exercising our jurisdiction to review the merits of the defendant’s appeal.” United States v. Corso, 549 F.3d 921, 926 (3d Cir.2008); see United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir.2007) (“this court retains subject matter jurisdiction over the appeal by a defendant who had signed an appellate waiver ... [but] we will not exercise that jurisdiction to review the merits of [defendant’s] appeal if we conclude that []he” validly waived his right to appeal).[1] We will decline to review the merits of Cassese’s appeal if we conclude “(1) that the issues he pursues on appeal fall within the scope of his appellate waiver[,] and (2) that he knowingly and voluntarily agreed to the appellate waiver, *205 unless (3) enforcing the waiver would work a miscarriage of justice.” Corso, 549 F.3d at 927 (emphasis added).
A. Scope of the Waiver
Our review of the scope of appellate waivers is plenary, Corso, 549 F.3d at 926, and such waivers will be “strictly construed.” United States v. Khattak, 273 F.3d 557, 562 (3d Cir.2001). The waiver set forth in the amendment to the plea agreement is straightforward, stating that Cassese “knows that he has and ... voluntarily waives[ ] the right to file any appeal ... including but not limited to an appeal under 18 U.S.C. § 3742 ... which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range.” (Appendix at 9.) Cassese concedes, as he must, that he received a within-Guidelines sentence. He contends, however, that “[t]he waiver does not ... in any way speak to the subject of this appeal, which asserts a challenge — not to the ‘sentence imposed’— but to the faulty process undertaken by the [Djistrict [Cjourt in arriving at that sentence.” (Appellant’s Reply Br. at 1-2; see also Appellant’s Br. at 16.)
The distinction that Cassese attempts to draw is unpersuasive. In waiving his right “to file any appeal ... which challenges the sentence imposed,” (emphasis added), Cassese did not somehow reserve the right to contend that the District Court committed procedural error in imposing his sentence. He now seeks just that review, requesting a determination that his sentence was procedurally unreasonable and that, consequently, he should be resentenced. United States v. Tomko, 562 F.3d 558, 568 (3d Cir.2009) (en banc) (“Ultimately, ‘[t]he touchstone of ‘reasonableness’ is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)’ ”) (citation omitted). Such an appeal is undoubtedly precluded by the plain language of the amendment to the plea agreement.
B. Validity of the Waiver
Cassese argues that his waiver was unknowing because the District Court violated Federal Rule of Criminal Procedure ll(b)(l)(N). “[Wjhen a defendant seeks to set aside his appellate waiver based on an unpreserved claim that the [Djistrict [Cjourt did not conduct an adequate colloquy ... we review ... for plain error.” Corso, 549 F.3d at 926-27.
The amendment to the plea agreement contains the waiver invoked by the Government. See United States v. Goodson, 544 F.3d 529, 535 (3d Cir.2008) (holding that Government must invoke plea waiver to make “enforceability of that waiver ... [an] issue in th[e] appeal”). That waiver, however, went unmentioned when the amendment was discussed by the parties and the Court.
Because Cassese “did not object before the District Court to its purported Rule 11 error, he ‘has the burden to satisfy the plain error rule,’ and must show (1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was ‘plain,’ i.e., clear or obvious, and (3) that the error affected his substantial rights.” Corso, 549 F.3d at 928 (quoting United States v. Vonn, 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002)). But “even if all three conditions are met, we will exercise our discretion to correct the unpreserved error only if [Cassese] persuades us that ... ‘the error seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings.’ ” Id. (quoting United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).
There is no question that the District Court failed to comply with Rule *206 ll(b)(l)(N), and that its failure to do so was clear. “Before the [district] court accepts a plea of guilty ... the court must inform the defendant of, and det&nnine that the defendant 'understands ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.” See Fed. R.Crim.P. ll(b)(l)(N) (emphasis added). Here, the Court did neither, a failure to which the Government gives short shrift, noting in passing that the Court “technically” violated Rule ll(b)(l)(N). (Appellee’s Br. at 20.) There was nothing “technical[ ]” about it.
We therefore proceed to the “third prong of the plain-error analysis, which requires [Cassese] to show that his substantial rights were affected” by the District Court’s error. Corso, 549 F.3d at 929. To establish that his substantial rights were affected, Cassese is “obliged to show a reasonable probability that the Rule 11 error ‘precluded him from understanding that he had a right to appeal and that he had substantially agreed to give up that right.’ ” Id. (quoting Goodson, 544 F.3d at 541); see United States v. Sura, 511 F.3d 654, 662 (7th Cir.2007) (“If the safeguard required by Rule 11 is missing, the record must reveal an adequate substitute for it, and the defendant must show why the omission made a difference to him”).
Cassese argues that because the amendment to the plea agreement was accepted with very little discussion, and the appellate waiver provision not discussed at all, he did not grasp the full contours of the amendment. The Government counters that Cassese signed the amendment before sentencing, and indicated — upon questioning by the Court — that he had read and understood it, although the Government concedes that no reference was made to that part of the amendment that dealt with waiver. The point of Rule 11(B)(1)(N), however, “is that a signed piece of paper is not enough, and the District Court made no effort to determine that [Cassese] ... understood the effect of his waiver on his right to appeal, or even whether he had discussed the waiver with his attorney.” Corso, 549 F.3d at 930 (quotation marks and citation omitted).
The Government stresses that the circumstances before us are similar to those in Goodson, 544 F.3d at 540-41, where the defendant, like Cassese, was college educated and had committed a relatively complex series of financial crimes. There we concluded that the appellate waiver was knowing and voluntary, but that conclusion rested on more than just the defendant’s level of education. Although the district court in Goodson failed to follow Rule ll(b)(l)(N), the prosecutor did “recitfe] the terms of the appellate waiver” during the plea colloquy. Id. at 540. Under those circumstances, we stated that the defendant could not demonstrate that the “deficient Rule 11 colloquy precluded him from understanding that he had ... substantially agreed to give up [his] right [to appeal].” Id. at 541.
Here, the substance of the Rule 11 error was greater — the appellate waiver was not mentioned by either the Court or the Government. The Government notes that Cassese undoubtedly discussed the waiver with his counsel who it accurately describes as “one of the preeminent criminal defense attorneys in New Jersey.” (Appellee’s Br. at 22.) According to the Government, “Cassese, therefore, did not need a formal explanation from the District Court to understand that his Plea Agreement contained an appellate waiver.” (Id.) We are, to say the least, perplexed by the Government’s abject dismissal of the requirements of Rule ll(b)(l)(N) and its refusal to recognize that “[i]n determining *207 whether a waiver of appeal is ‘knowing and voluntary,’ the role of the sentencing judge is critical.” Khattak, 273 F.3d at 563. “[W]e are satisfied that [Cassese] has carried his burden to show that the District Court’s near total deviation from the mandates of Rule ll(b)(l)(N) affected his substantial rights.” Corso, 549 F.3d at 931.[2]
“But, a clear error affecting substantial rights cannot, without more, satisfy the fourth prong of the plain-error analysis.” Id. at 931 (quotation marks and citation omitted). Cassese must “establishf] that the District Court’s deficient colloquy seriously affected the fairness, integrity, or public reputation of the judicial proceedings.” Id. That he cannot do. He alleges only that his within-Guidelines sentence was proeedurally deficient and, thus, unreasonable because the Court failed to set forth its analysis of the § 3553(a) factors. “[I]t will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.” United States v. Jackson, 523 F.3d 234, 244 (3d Cir.2008). This is simply not such a case, and we say that with some assurance because, as we recently noted but have not yet held, a miscarriage of justice analysis “requires us to peek behind the veil of the waiver and look, however superficially, at the ... merits of [the] appeal.” United States v. March, 336 Fed.Appx. 218, 221, 2009 WL 1941990, at *2 n. 2 (3d Cir.2009).[3]
III. Conclusion
For the foregoing reasons, we will enforce the appellate waiver and affirm the judgment of sentence.

. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

. We note that "the issues raised here demonstrate once again that faithful adherence to the text of Rule 11 ... can forestall needless appeals." United States v. Fulford, 825 F.2d 3, 8 (3d Cir. 1987). And we stress that the Government, which, as we observed in Khattak, sees appellate waivers as an "opportunity to conserve resources necessary to prosecute an appeal,” 273 F.3d at 562, should be particularly vigilant in ensuring that those waivers are adequately addressed during plea colloquies.

. Determining whether "enforcement of a waiver would work a miscarriage of justice,” United States v. Wilson, 429 F.3d 455, 458 (3d Cir.2005), may overlap with “our analysis under the fourth prong of the plain-error rule.” Corso, 549 F.3d at 931 n. 3. As in Corso, 'jw]e need not resolve” the "question whether, or the extent to which” the two inquiries overlap "because we conclude that enforcing [Cassese’s] appellate waiver would not result in a miscarriage of justice under either the plain-error rule or Khattak and its progeny.” Id.